DEBORAH MCGRATH & another[1] *vs.* ELLIOTT I. MISHARA
& another.[2]

Suffolk.  January 4, 1982. — May 3, 1982.

Present: HENNESSEY, C.J., WILKINS, LYNCH, & O'CONNOR, JJ.

*Consumer Protection,* Landlord and tenant, Damages, Attorney's fees.
*Landlord and Tenant,* Rent, Security deposit.  *Rent Control.  Damages,* Consumer protection case, Attorney's fees, Rent control.

In an action by tenants against their landlord alleging that three notices to
quit constituted, in the circumstances, an unfair, deceptive, or unrea-
sonable attempt to collect a debt under G. L. c. 93A, § 49, the tenants
did not show that they had suffered any "loss of money or property,
real or personal," pursuant to c. 93A, § 9 (1), as a result of the land-
lord's violation of § 49 (c), and consequently, no recovery was possible
under c. 93A. [78-79]

Evidence supported a judge's finding that a landlord acted in bad faith in
withholding from its tenants' security deposit back rent allegedly owed
and that such conduct violated G. L. c. 186, § 15B. [79-80]

A landlord's attempt to enforce an unlawful demand for excess rent alleg-
edly due in June, July, and August of 1975 by retaining such rent when
it returned the tenants' security deposit in July, 1976, constituted a vio-
lation of the Boston rent control ordinance; the tenants' filing of their
complaint within one year of the return of the security deposit entitled
them to recover damages under the ordinance which required that an
action be brought not later than one year after the date of violation.
[80-82]

In an action by tenants alleging that their landlord's demands for excess
rent for three months, three notices to quit, and an improper deduc-
tion from their security deposit constituted seven distinct violations of
G. L. c. 93A, the tenants' only cause of action under c. 93A, § 9 (1),
was for the improper deduction from their security deposit and recov-
ery was properly limited to that sum, trebled to reflect the wilful and
knowing nature of the violation. [82-83]

----

[1] Ellen Witter Harrington.

[2] Arashim Company.  The individual defendant, Elliott I. Mishara, is
an attorney and general partner of the defendant Arashim Company.

In the circumstances, three judgments in favor of tenants against their landlord for the improper deduction from their security deposit of back rent in causes of action pursuant to G. L. c. 186, § 15B, under a provision of a local rent control ordinance, and pursuant to G. L. c. 93A, constituted an improper award of cumulative damages for the same wrong. [83-86]

In an action by the tenants against their landlord to recover their security deposit and interest improperly deducted from the security deposit, the tenants were entitled to recover pursuant to G. L. c. 93A, § 9 (3), three times the interest withheld for the landlord's wilful violation of c. 93A; however, recovery of twice the unpaid interest under G. L. c. 186, § 15B would be an improper award of cumulative damages. [86-87]

Limitations placed by the judge on the award of attorney's fees under G. L. c. 93A, § 9 (4), in favor of the tenants following litigation against their landlord were not unreasonable and were within his discretion. [87]


CIVIL ACTION commenced in the Housing Court of the City of Boston on June 3, 1977.

The case was heard by *King, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Elliott I. Mishara* for the defendants.

*Roy J. Watson, Jr.,* for the plaintiffs.

LYNCH, J.  This appeal from a decision of the Housing Court Department of the Trial Court raises issues with respect to the scope of a landlord's liability to a tenant in a rent-controlled apartment for improper demands for rent and unlawful retention of a security deposit.

The following facts found by the Housing Court judge are material to the issues on appeal.  From January 15, 1974, until June 30, 1976, the plaintiffs (tenants) rented an apartment in the Allston section of Boston from the defendant Arashim Company (landlord).  The apartment was subject to rent control under the provisions of the Boston Rent Control Ordinance (City of Boston Code, Ordinances, Title 10, c. 3 [1975]).  The parties entered into a written lease for a term of seven and one-half months, beginning January 15,

1974, and ending August 31, 1974, and continuing from year to year thereafter unless either party gave written notice on or before June 1st of a particular year of intent to terminate the lease on the following August 31. The tenants gave the landlord a security deposit of $330. The rent under the lease was set at $165 a month. Under another provision of the lease, if an increase in rent was authorized by the rent control administration the tenants would be required to pay the increased rent "commencing with the effective date of such authorization . . . ."

In a decision dated March 28, 1975, the Boston rent control administration granted the landlord a rent increase of $45 a month for the apartment occupied by the tenants. The decision contained the following language: "The new maximum rent is established as of the date of this decision. However the new maximum rent may not be charged until the expiration of any lease or tenancy existing on the date of this decision or unless the tenant is given the option of terminating the tenancy under a provision of the lease agreement." The Housing Court judge found that under the lease between the tenants and the landlord, the landlord could not lawfully demand the increased rent until September 1, 1975.[3] Nonetheless, the defendant Mishara, as general partner of the landlord, wrote to the tenants on April 7, 1975, stating that the rent for their apartment would be $210 a month as of June 1, 1975. The tenants responded by sending a check for $165 for the June, 1975, rent. In an accompanying letter they informed the landlord that they were not obligated to pay the increased rent until September 1, 1975, but were willing to pay it beginning on that date. They further advised the landlord that the rent control board hearing officer who had signed the decision authorizing the increased rental was willing to answer any questions the landlord might have.

---

[3] The Housing Court decision actually reads "September 1, 1976" but, under the circumstances, this appears to be a clerical error.

The landlord then sent the tenants a fourteen days' notice to quit (see G. L. c. 186, § 11), dated June 18, 1975, citing the tenants' failure to pay the $45 increase for June. A second fourteen days' notice to quit was sent September 23, 1975, citing an arrearage of $90 and a third notice, which purported to be a corrected version of the September 23 notice, was sent September 24, citing an arrearage of $135 in the rent for the months of June, July, and August. In each of these months the tenants paid the landlord the original lease rent of $165. The judge found that when it sent the three notices to quit and the April 7 letter "the landlord was aware of or should have been aware that [it] was not entitled to demand the rent increase prior to September 1, 1975." The landlord took no action to evict the tenants and they remained in the apartment and paid the increased rent of $210 from September, 1975, until June, 1976.

The judge found that in May, 1976, the plaintiff Mc-Grath entered into an agreement with the landlord (which was apparently never reduced to writing) under which Mc-Grath would vacate the apartment on June 30, 1976, and become a tenant in another apartment owned by the landlord in the same building. As part of this agreement the landlord promised to apply $210 of the tenants' security deposit to the June rent for the original apartment and to refund the balance to the tenants. In these discussions with McGrath, the landlord did not mention its claim to additional rent for the months of June, July, and August, 1975.

On July 16, 1976, the landlord sent the tenants an itemized list of certain deductions it had made from their $330 security deposit together with a check for $10.50. The list indicated a deduction of $135 for rent allegedly owed from the previous summer. In addition, the judge found that the tenants were not credited with the full amount of interest owed to them under G. L. c. 186, § 15B. The judge concluded that a total of $143.32 had been unlawfully withheld from the tenants' security deposit. The tenants made several unsuccessful attempts to obtain this sum from the landlord in the fall of 1976. Finally, on January 17, 1977, they

sent the landlord a demand letter under G. L. c. 93A, § 9 (3), to which no response was received. The tenants then filed this action.

1. *The tenants' complaint and the Housing Court judgment.* The tenants allege that the landlord's conduct entitles them to multiple damages under four different statutes as well as attorney's fees. Their complaint, in four counts, alleged violations of Boston's Rent Control Ordinance; G. L. c. 93, § 49 (c); G. L. c. 186, § 15B; and G. L. c. 93A. They sought total damages in excess of $8,000 plus attorney's fees. In the Housing Court the judge entered judgment for the landlord on the c. 93, § 49 (c), count and judgment for the tenants on the remaining three counts in a total amount of $1,118.60 plus costs and interest. He also awarded the tenants attorney's fees of $2,950 under the c. 93A count. All parties have appealed, the landlord claiming the judgment is an award of cumulative damages and the tenants claiming that the damage award should have been larger and that the judge erred in calculating attorney's fees.

We turn first to the question whether the landlord violated the various statutory provisions at issue. We then discuss the cumulative damages issues raised by the judgment. Finally, we review the judge's award of attorney's fees. We affirm in part and reverse in part.

2. *The statutory causes of action.* a. *Violation of G. L. c. 93, § 49 (c).* The judge agreed with the tenants that the three notices to quit constituted an unfair, deceptive, or unreasonable attempt to collect a debt under G. L. c. 93, § 49, in that they were "threats of . . . action[s] which the creditor [landlord] in the usual course of business does not in fact take" (§ 49 [c]). He noted, though, that the final paragraph of § 49 expressly provides that a failure to comply with the provisions of the section constitutes an unfair or deceptive act or practice under G. L. c. 93A. Thus, plaintiffs seeking to recover for violations of c. 93, § 49, must satisfy the requirements for recovery under c. 93A. *Baldassari* v. *Public Fin. Trust,* 369 Mass. 33, 45 (1975).

H.J. Alperin & R.F. Chase, Consumer Rights and Remedies § 296, at 588 (1979). At the time the tenants' cause of action arose, recovery under c. 93A was limited to consumers who suffered a "loss of money or property, real or personal." G. L. c. 93A, § 9 (1), as found in St. 1971, § 241. This court has interpreted the word "property" as meaning "the kind of property that is purchased or leased, not such intangibles as a right to a sense of security, to peace of mind, or to personal liberty." *Baldassari* v. *Public Fin. Trust, supra.* See also *Wolfberg* v. *Hunter,* 385 Mass. 390, 396 (1982). The tenants did not suffer any such loss of money or property as a result of the landlord's violation of G. L. c. 93, § 49 (c),[4] and the judge therefore correctly found that no recovery was possible under G. L. c. 93A as it then read.

b. *Violation of G. L. c. 186, § 15B.* The judge found that the landlord violated G. L. c. 186, § 15B, by improperly withholding $143.32 from the tenants' security deposit. He awarded the tenants $286.64 plus interest under the double damage provision of c. 186, § 15B, as in effect in 1976. See St. 1970, c. 666, § 1, as amended by St. 1972, c. 639, § 1.[5]

The landlord does not seriously dispute the judge's finding that it was not entitled to the $135 which it deducted from the security deposit for back rent allegedly owed. It contends, however, that the deduction of $135 was made in good faith and points to language in the statute permitting a deduction for "unpaid rent." The landlord argues that it should not be held liable under § 15B merely because a court later found the deduction improper.

---

[4] Although the tenants suffered a loss of money when the landlord improperly deducted a portion of their security deposit, this loss was not a result of the unjustified notices to quit.

[5] An extensive amendment of G. L. c. 186, § 15B, in 1977 increased the damages recoverable for improper retention of all or part of a security deposit to three times the amount of the deposit or the portion improperly withheld plus interest, together with court costs and attorney's fees. St. 1977, c. 979, § 1, as amended by St. 1978, c. 553, § 2.

The problem with the landlord's argument is that it over-looks the judge's express finding that the landlord knew or should have known that rent was not in fact due. At a min-imum, a landlord must have a reasonable, good faith belief that it is entitled to an amount deducted as "unpaid rent" under § 15B. Cf. *Goes* v. *Feldman*, 8 Mass. App. Ct. 84, 91-92 (1979). We note that the statute allows a landlord to deduct from a tenant's security deposit only unpaid rent and the amount of any damage caused by the tenant or the ten-ant's guests. As to this latter type of deduction the statute requires the landlord to "itemiz[e] . . . [the damage] with particularity indicating the nature of the repair necessary to correct any damage and the actual or estimated cost there-of." G. L. c. 186, § 15B, as amended through St. 1975, c. 154. This requirement has the effect of ensuring that landlords do not make spurious and unfounded deductions for damage. When the permitted deduction for "unpaid rent" is viewed in the context of the statute as a whole, we think it clear that it was not intended to permit a deduction of "rent" by a landlord who knew or should have known it was improper. There is support in the record for the judge's finding that the landlord here acted in bad faith in deduct-ing the $135 figure for rent owed and that this conduct vio-lated the provisions of § 15B.[6]

c. *Violation of the Boston Rent Control Ordinance.* As we have noted, the judge found that the maximum lawful rent for the tenants' apartment during the months of June, July, and August of 1975 was $165 a month. Based on this finding he then held that the landlord's attempt to collect an additional $45 in each of those months constituted a viola-tion of the Boston Rent Control Ordinance (ordinance) and entitled the tenants to damages under the civil remedy pro-

---

[6] The award of damages under G. L. c. 186, § 15B, was also premised on the landlord's failure to credit the tenants with an additional $8.32 to which they were entitled as interest on their security deposit. The land-lord's arguments on appeal do not challenge this portion of the award and we therefore do not discuss it.

vision of the ordinance.[7] The judge awarded the tenants $405, or three times the amount of excess rent demanded.

If the tenants' cause of action under the ordinance rested solely on the landlord's conduct during the summer and fall of 1975, no award of damages would be possible. Under § 109 (c) of the ordinance "[a]ction to recover liquidated damages under the provisions of this section shall not be brought later than one year after the date of violation." The tenants would not be entitled to recover damages based on violations which occurred over one year before their complaint was filed. *Huard* v. *Forest Street Hous., Inc.,* 366 Mass. 203, 209-210 (1974). *Hogan* v. *Coleman,* 326 Mass. 770, 776 (1951) (provision of Federal rent control statute on which Boston ordinance was patterned). See also J.W. Smith & H.B. Zobel, Rules Practice § 8.21 (1974).

However, the landlord's persistent effort to collect rent in excess of the lawful maximum culminated in its retention of $135 in July of 1976 when it returned the tenants' security deposit. The tenants' complaint alleged this to be a violation of the ordinance and the complaint was filed within a year. While it is true that a security deposit is not rent, see *Whittier* v. *Goldberg,* 274 Mass. 335, 337 (1931), a landlord may, in seeking to enforce an unlawful demand for excess rent, treat all or part of a security deposit as rent retained in such a way that he has violated § 109 of the ordinance.

---

[7] City of Boston Code, Ordinances, Title 10, c. 3, § 109 (1975), provides: "Any person who *demands,* accepts, receives, *or retains any payment of rent in excess of the maximum lawful rent,* in violation of the provisions of this ordinance, or any rules, regulation, or order hereunder promulgated, *shall be liable* as hereinafter provided to the person from whom such payment is demanded, accepted, received, or retained . . . *for reasonable attorney's fees and costs* as determined by the court, *plus liquidated damages in the amount of one hundred dollars, or not more than three times the amount by which the payment or payments demanded, accepted, received or retained exceed the maximum rent which could be lawfully demanded, accepted, received or retained, whichever is the greater*; provided, that if the defendant proves that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation, the amount of such liquidated damages shall be the amount of the overcharge or overcharges" (emphasis supplied).

*Huard* v. *Forest Street Hous., Inc.,* 366 Mass. 203, 211 (1974) (analogous provision of Statewide rent control act, St. 1970, c. 842, § 11 [a]). We think the judge properly found a violation of § 109 in this case.[8]

d. *Violation of G. L. c. 93A.* The judge ruled that "the landlord's attempts to collect rent which [it] was not entitled to and the landlord's deduction of the claimed rent in question from the tenants' security deposit" were unfair or deceptive acts under G. L. c. 93A, § 2, and regulations of the Attorney General issued pursuant to subsection (c) thereof. He further found that the landlord's violation of c. 93A was "wilful" and "knowing" under c. 93A, § 9 (3). He therefore awarded the tenants treble damages of $426.96 (three times their monetary loss of $142.32) plus attorney's fees of $2,950 and costs of $103.47.

At the time this dispute arose, c. 93A gave a cause of action to lessees of real property who suffered "any loss of money or property . . . as a result of the use or employment by another person of an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of said section two . . . ." G. L. c. 93A, § 9 (1), as amended by St. 1971, c. 241. The landlord does not seriously challenge the judge's finding of a c. 93A violation.[9] Instead, the landlord attacks the award

[8] The tenants also argued that the landlord's April 7, 1975, letter and the three subsequent notices to quit constituted four separate violations of § 109 of the Boston ordinance and entitled the tenants to recover four separate treble damage awards. The judge rightly rejected this construction of § 109. The landlord's various letters and notices established only one continuing violation of § 109. This court has rejected similar attempts to recover multiple damage awards under treble damage provisions of other statutes regulating the landlord-tenant relationship. *Simon* v. *Solomon,* 385 Mass. 91, 110-111 (1982). *Darmetko* v. *Boston Hous. Auth.,* 378 Mass. 758, 761-762 (1979). Nothing in the language of § 109 suggests that each discrete expression of the landlord's basic claim to an additional $135 created a new cause of action under the ordinance. Of course a different situation would be presented if the later unlawful demands for rent were made after suit had already been brought to redress the earlier illegal conduct. *Simon* v. *Solomon, supra* at 111.

[9] The landlord's only direct attack on the judge's conclusion is a one-sentence assertion that "[t]he withholding of claimed rental by the land-

under c. 93A as an improper award of cumulative damages. We discuss this claim below.

The tenants also object to the judge's handling of the c. 93A claim. They argue that the landlord's actions (i.e., demands for excess rent in June, July, and August, three notices to quit, and the improper deduction from the security deposit) constitute seven distinct violations of c. 93A. They also claim that each violation need not be supported by a "loss of money or property" so long as the tenants suffered some actual loss. We need not decide whether the landlord's conduct could support more than one award of damages under the current version of c. 93A, § 9 (1), inserted by St. 1979, c. 406, § 1. Even if we assume that each of the seven named acts was an unfair or deceptive one declared unlawful by c. 93A, § 2, only the last of those acts resulted in loss of money to the tenants. Under the clear terms of § 9 (1), as then in effect, the tenants' only cause of action was for the improper deduction from the security deposit. The judge correctly limited the tenants' recovery under c. 93A to this sum, trebled to reflect the wilful and knowing nature of the violation.

3. *Cumulative damage question.* Our review of the statutory provisions discloses no error in the judge's conclusion that the tenants had causes of action based on G. L. c. 186, § 15B, the Boston Rent Control Ordinance, and G. L. c. 93A. The mere fact that these statutes contain some overlapping prohibitions and remedies does not establish a legislative intent to preclude their concurrent application. *Dodd* v. *Commercial Union Ins. Co.,* 373 Mass. 72, 75-78 (1977). It is nonetheless clear that the three judgments en-

lord . . . is not sufficient by itself to support a claim under c. 93A." For this proposition the landlord cites *Gopen* v. *American Supply Co.,* 10 Mass. App. Ct. 342 (1980). We do not read *Gopen* as supporting the landlord's position. In any event the landlord's brief fails to give any reasons in support of its contention, as required by our rules. Mass. R.A.P. 16 (a) (4), as amended, 367 Mass. 919 (1975). We decline to devote any extended discussion to this contention. *Manchester* v. *Department of Environmental Quality Eng'r,* 381 Mass. 208, 214 n.7 (1980). *Hanner* v. *Classic Auto Body, Inc.,* 10 Mass. App. Ct. 121, 122 (1980).

tered in favor of the tenants under these statutes reflect an improper award of cumulative damages for the same wrong.

The tenants were awarded $405 under the treble damage provision of the Boston Rent Control Ordinance based on the landlord's improper retention of $135 in excess rent. They were also awarded $286.64 plus interest under the double damage provision of former c. 186, § 15B, based on the landlord's improper deduction of $143.32 from their security deposit. The conclusion is inescapable that, with the exception of $16.64 representing twice the amount of interest wrongfully withheld, the award under c. 186 and the award under the ordinance were for the same wrong. A different case might be presented if the award under the ordinance was based on the landlord's improper demands for rent in the summer and fall of 1975, since a mere demand for excess rent will constitute a violation of the ordinance while an actual withholding of money is necessary to establish a violation of c. 186, § 15B. Here, though, the tenants' action under the ordinance was timely only in so far as it was based on the landlord's deduction of rent from the security deposit in July, 1976. Although the tenants may not recover two damage awards merely because this deduction was a violation of both laws, see *Darmetko* v. *Boston Hous. Auth.*, 378 Mass. 758, 761 (1979), they are entitled to one award in the larger amount authorized by the ordinance.[10]

The award of $426.96[11] to the tenants under c. 93A is also partially cumulative. We have held that, as the result of the pre-1979 requirement that a plaintiff show a loss of money or property, the tenants' only cause of action under c. 93A was for the improper deduction from their security deposit. Thus $405 of the award under c. 93A represents

---

[10] The damages recoverable for violations of G. L. c. 186, § 15B, have since been increased. See St. 1977, c. 979, § 1. In a case such as this one, the damage award would now be the same whether the plaintiff recovered under c. 186 or under the ordinance.

[11] This figure, representing three times the sum deducted by the landlord from the tenants' security deposit, should be $429.96 since it is clear from the record that the sum deducted was $143.32.

an amount already recovered under the rent control ordinance. We see no reason to believe that the Legislature intended in c. 93A to authorize cumulative damages under that statute and other statutes for the same wrong.

"[The] basic policy [of c. 93A] is to ensure an equitable relationship between consumers and persons engaged in business." *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 624 (1978). In many cases, c. 93A creates "new substantive rights by making conduct unlawful which was not previously unlawful under the common law or any prior statute." *Id.* at 626. See also *Linthicum* v. *Archambault*, 379 Mass. 381, 383 (1979) (relief under c. 93A is "in addition to, and not an alternative to, traditional tort and contract remedies"). This court has never said, however, that where certain conduct is already unlawful or becomes unlawful under another statute, c. 93A was intended to authorize a duplicative recovery for the wrong under both statutes. Such a construction of c. 93A was implicitly rejected in *Linthicum* v. *Archambault, supra,* where this court held that the plaintiff, who had prevailed in a contract claim, was also entitled to attorney's fees and costs under c. 93A. Since the defendant's violation of c. 93A had not been wilful (thus foreclosing an award of multiple damages) and the plaintiff had already recovered actual damages under the contract claim, no other c. 93A relief was available.

The tenants' suggested construction of c. 93A runs counter to the underlying goal of an "equitable relationship" between consumers and those in business. In the instant case, for example, the tenants' multiple damage theory would render the landlord liable for well over $10,000 under three different statutes for its wrongful retention of $135 from the tenants' security deposit. We decline to attribute to the Legislature the intent to permit such a recovery. Multiple damage provisions such as those contained in all three of the statutes involved here reflect the Legislature's displeasure with the proscribed conduct and its desire to deter such conduct and encourage vindicative lawsuits. *Hampshire Vil-*

McGrath v. Mishara.

*lage Assocs.* v. *District Court of Hampshire,* 381 Mass. 148, 150-151, cert. denied sub nom. *Ruhlander* v. *District Court of Hampshire,* 449 U.S. 1062 (1980). These goals are adequately served when a plaintiff has recovered one award of multiple damages.[12]

One issue remains. A small amount of the damages awarded under c. 93A represents interest improperly deducted from the security deposit. One of the regulations issued by the Attorney General pursuant to G. L. c. 93A, § 2 (c), and in force when this dispute arose, makes it an unfair or deceptive practice to "[f]ail to return the entire security deposit less damages and other lawful deductions, if any, including interest required by law within thirty (30) days after termination of the tenancy." Regulation XVI D3, 20 Code Mass. Regs. Part 5, at 46 (1975).[13] It appears that the judge found a violation of c. 93A based on this provision.

In *Hampshire Village Assocs.* v. *District Court of Hampshire, supra,* this court noted that the Attorney General's regulation covers some of the same conduct regulated by c. 186, § 15B, although we had no occasion to discuss this point further. *Id.* at 155 n.13. The landlord appears to argue that c. 186, § 15B, and c. 93A "conflict" in this regard and urges us to limit the tenants to recovery under c. 186, § 15B, because it is "more specific." We find this argument unpersuasive. The protection of c. 93A clearly extends to lessors of real property, see G. L. c. 93A, § 9 (1), and thus to the landlord-tenant relationship. See *York* v. *Sullivan,* 369 Mass. 157 (1975). The Attorney General has issued the regulation in question pursuant to his undisputed statutory authority to "interpre[t] the provisions of subsec-

---

[12] It makes no difference in this case whether the tenants recover the $405 under the ordinance or under G. L. c. 93A since the damage award would be the same under either law and the landlord has not seriously disputed the finding of a violation of both laws. It is therefore unnecessary for us to discuss the extent to which the ordinance and c. 93A regulate the same conduct.

[13] This regulation has since been recodified at 940 Code Mass. Regs. 3.17 (4) (c) (1978).

tion 2(*a*)" of c. 93A. See c. 93A, § 2(*c*). We see no conflict between the regulation and c. 186, § 15B, and no other reason to conclude that the Attorney General was without power to promulgate the regulation. The landlord cites us to no case or statute containing anything to the contrary. The tenants are therefore entitled to recover $25 for the landlord's wilful violation of c. 93A, since this exceeds three times the interest improperly withheld from them. G. L. c. 93A, § 9 (3). It follows that their recovery of twice the unpaid interest under c. 186, § 15B, is improperly cumulative under the principles we have discussed.

4. *The award of attorney's fees.* The judge awarded the tenants attorney's fees of $2,950 under G. L. c. 93A, § 9 (4). In reaching this figure the judge excluded time spent by the tenants' counsel in connection with several defaults against the landlord and Mishara and a related motion by the tenants to postpone the trial. The judge found that the defendants' failure to appear at a conciliation hearing and for trial was the result of improperly addressed notices sent by the clerk's office. On each occasion the defendants were defaulted and their later motions (in the first case to set aside entry of default, in the second to vacate a judgment entered against them) were granted.

Since the amount of a reasonable attorney's fee is largely discretionary, *Linthicum* v. *Archambault,* 379 Mass. 381, 388 (1979), we do not think that the limitations on the award of fees established by the judge which absolved the landlord of the costs of errors which arose from the system can be said to be unreasonable or an abuse of discretion. We find no error in the computation of attorney's fees.

We affirm the judgments entered in favor of the tenants under the Boston Rent Control Ordinance and in favor of the defendants on the G. L. c. 93, § 49, count. We vacate the judgment under G. L. c. 186, § 15B. Finally, we affirm the judgment under c. 93A in so far as it relates to attorney's fees and costs. We vacate that judgment as to the judge's award of damages, and order the entry of a new judgment in the amount of $25.

*So ordered.*