581 So.2d 911 (1991)
Edna H. ROBARTS, As Personal Representative of the Estate of Gene F. Robarts, Deceased, Appellant,
v.
Joseph F. DIACO, Bernard M. Hochberg and St. Joseph's Hospital, Inc., a Florida Corporation, Appellees.
No. 90-02317.
District Court of Appeal of Florida, Second District.
May 31, 1991.
Rehearing Denied July 11, 1991.
*912 David A. Maney and A. Ann Arledge of Maney, Damsker & Arledge, P.A., and Mac A. Greco, Jr., Tampa, for appellant.
T. Paine Kelly, Jr. of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellee St. Joseph's Hosp., Inc.
CAMPBELL, Acting Chief Judge.
Appellant, plaintiff below, Edna H. Robarts (Roberts), as personal representative of the estate of Gene F. Robarts, deceased, appeals the final judgment which dismissed with prejudice her action for contribution against appellee (defendant below), St. Joseph's Hospital, Inc. (St. Joseph's). We reverse.
On May 13, 1987, Gene F. Robarts underwent abdominal surgery at St. Joseph's. The surgery was performed by appellees, Drs. Diaco and Hochberg. It was undisputed that a sponge left in Mr. Robarts' abdomen during surgery resulted in his death. Robarts, in her capacity as personal representative of her husband's estate, brought a wrongful death action against Drs. Diaco and Hochberg and St. Joseph's, each of whom contested liability. Subsequently, and prior to trial, Robarts entered into a written settlement agreement with Drs. Diaco and Hochberg resolving the wrongful death action as to all parties named in Robarts' complaint.
In the agreement, as consideration for the settlement, the two doctors paid Robarts $250,000 and assigned to her any right to contribution from St. Joseph's they *913 might have under section 768.31 et seq., Florida Statutes (1989), Florida's Uniform Contribution Among Tortfeasors Act. While St. Joseph's was released from liability for the wrongful death action by the agreement executed by Robarts and Drs. Diaco and Hochberg, St. Joseph's was not a signatory party to that agreement.
The essential and pertinent parts of the settlement agreement are as follows:
Whereas, defendants Diaco and Hochberg deny liability for the damages sought, they do recognize that this is a disputed claim and that, therefore, a jury verdict could be rendered against them. They further recognize that St. Joseph's Hospital, Inc., through its agents and employees, also could be held liable to the plaintiff for the claims resulting from the decedent's death, by virtue of the fact that they were responsible for counting the sponges that resulted in complications that allegedly led to the decedent's death. It is the belief of the defendants Diaco and Hochberg that the pro rata share of exposure of St. Joseph's Hospital is greater than their collective exposure, but neither make any guarantees or representations in that regard.
Whereas, it is desirable for Drs. Diaco and Hochberg to liquidate their potential exposure to a jury verdict, judgment and levy in execution;
Therefore, the parties agree:
(a) For and in consideration of the sum of $250,000.00, Edna H. Robarts, as Personal Representative of the Estate of Gene F. Robarts, deceased, does hereby acquit, release and forever discharge Joseph F. Diaco, Bernard M. Hochberg and St. Joseph's Hospital, Inc., and their employees, parent corporation, stockholders, officers and directors, heirs, personal representatives, successors, assigns and insurance carriers from any and all claims, demands, debts, damages, costs, attorney fees and expenses, actions and causes of action or suits of any kind or nature whatsoever, whether arising in law or in equity which she may have had, may now have, or may later have against them, by reason of any matter, cause, happening or thing occurring prior to, and up to and including the date of this release.
(b) Joseph F. Diaco and Bernard M. Hochberg, hereby assign and transfer to Edna H. Robarts, Personal Representative of the Estate of Gene F. Robarts, deceased, any and all rights or claims that exist in their favor in contribution under Section 768.31, Florida Statutes, and/or in indemnity against St. Joseph's Hospital, Inc., its agents, employees, officers and directors, or entities who may be jointly and severally liable in tort for the injury and/or damages to the estate and heirs of Gene F. Robarts, arising out of that incident or incidents which are the subject matter of a lawsuit filed in the Circuit Court of Hillsborough County, Florida, by Edna H. Robarts, Personal Representative of the Estate of Gene F. Robarts against Joseph F. Diaco, Bernard M. Hochberg and St. Joseph's Hospital, Inc., bearing Case No. 88-9826, Division "B".
(c) The parties to this agreement further agree and stipulate that any lawsuit brought against St. Joseph's Hospital, Inc., its agents, servants, employees, officers and directors, pursuant to this assignment, shall be brought in the name of the assignee, i.e., Edna H. Robarts, Personal Representative of the Estate of Gene Robarts, deceased, and not in the name of assignors. Provided that such designation does not affect the validity of this assignment.
(d) The parties hereto further agree and stipulate that no representation, promise or inducement, except as contained in this agreement, has been made by any party to any other party to enter into this agreement. The parties hereto agree that neither Joseph F. Diaco, Bernard M. Hochberg, nor their attorneys, have made any representation to the plaintiff, Edna H. Robarts, as Personal Representative of the Estate of Gene F. Robarts, deceased, or her attorneys as to the value, if any, of the assignment of their claim against St. Joseph's Hospital, *914 Inc., or the legal viability of that assignment.
The essential and pertinent parts of section 768.31 are as follows:
(2) RIGHT TO CONTRIBUTION. 
(a) Except as otherwise provided in this act, when two or more persons become jointly or severally liable in tort for the same injury to person or property, or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.
(b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is compelled to make contribution beyond his own pro rata share of the entire liability.
... .
(d) A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement or in respect to any amount paid in a settlement which is in excess of what was reasonable.
... .
(3) PRO RATA SHARES.  In determining the pro rata shares of tortfeasors in the entire liability:
(a) Their relative degrees of fault shall be the basis for allocation of liability.
(b) If equity requires, the collective liability of some as a group shall constitute a single share.
(c) Principles of equity applicable to contribution generally shall apply.
(4) ENFORCEMENT. 
(a) Whether or not judgment has been entered in an action against two or more tortfeasors for the same injury or wrongful death, contribution may be enforced by separate action.
... .
(5) RELEASE OR COVENANT NOT TO SUE.  When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and,
(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.
After Robarts and the doctors executed the settlement agreement, the trial judge entered an order approving settlement of the wrongful death claim and providing that upon payment of the monies and delivery of the executed assignment to her as contemplated by the agreement, Robarts was authorized and directed to deliver any and all releases necessary to complete the settlement. Robarts then, as assignee of appellee doctors' claims for contribution against St. Joseph's, filed an amended complaint for contribution against St. Joseph's seeking to enforce the doctors' statutorily created right of contribution.
Appellee St. Joseph's moved to dismiss the amended complaint on several grounds: (1) that the estate represented by Robarts had received "full compensation" for the wrongful death action by means of the settlement agreement and that any additional recovery by means of the assignment would be in excess of full and fair compensation and, therefore, unconscionable; (2) that a claim for contribution based on section 768.31 is an action arising out of a tort claim and, under Florida law, is generally not assignable; and (3) that the settlement executed by Robarts and the attempted assignment to her, by their own terms, extinguished any rights Robarts might claim to contribution against St. Joseph's. The trial court dismissed Robarts' amended complaint with prejudice.
We agree with the trial judge that this case is without any controlling precedent, *915 but we disagree with his findings and conclusions that the assignment to Robarts is invalid and conveys to her no actionable rights against St. Joseph's. We find, therefore, that the trial judge erred in dismissing Robarts' complaint.
Under section 768.31(2)(b), a joint tortfeasor is entitled to contribution only for the amount that he has paid which exceeds his pro rata share of the common liability. While the Uniform Contribution Among Tortfeasors Act, adopted by Florida as section 768.31, is silent as to the assignability of the right to contribution it creates, rights to contribution are generally recognized as being assignable. 18 Am.Jur.2d, Contribution § 3, p. 11. The law in other states that have adopted the Uniform Act is as precedentially unavailing as is the law of Florida. One state, Alaska, has recognized, without it being raised as an issue and without discussion, the right of a plaintiff to accept, and then sue upon, an assignment of a tortfeasor's right to contribution against another joint tortfeasor where the tort claim against both had been settled. Ogle v. Craig Taylor Equipment Co., 761 P.2d 722 (Alaska 1988).
If the right to contribution acquired by a joint tortfeasor who pays more than his pro rata share of liability for the tort is assignable, as we hold it is, then it must also be freely assignable. We hold, therefore, that the assignment of the doctors' rights of contribution in this case is not invalid merely because it was assigned to the original plaintiff in the tort action who may or may not have received full compensation for the injuries sustained by reason of the tort. If the assigning tortfeasor should choose to bestow a "windfall" upon the plaintiff by reason of such an assignment, that is a matter of contract between those parties. Such a plaintiff may, by way of such an assignment, ultimately recover more than what his full compensation for damages resulting from the tort alone would have been. However, that plaintiff cannot, because of the limitations of section 768.31(2)(b) and (3), recover more from a nonsettling joint tortfeasor on the assignment than the assigning tortfeasor paid in excess of his pro rata share of liability for the tort. Neither can that plaintiff recover from a nonsettling joint tortfeasor more than that nonsettling joint tortfeasor's pro rata share of the reasonable value of the entire liability. It has long been recognized that the Uniform Contribution Among Tortfeasors Act could be subject to manipulations that result in inequities. That, however, does not invalidate the statute or serve to lessen the remedies sought to be effected by the Act. See Frohlich and Gibson, The Case for Comparative Contribution in Florida, 30 U.Miami L.Rev. 713, 728-731 (1976).
It is important to recognize that such a right to contribution cannot ever be utilized, even in the circumstances presented by this case, to require a nonsettling joint tortfeasor to pay more than his pro rata share of the reasonable liability for the tort. Further, for such a right of contribution to exist, a nonsettling joint tortfeasor must also have been released from all liability to the injured party for the tort. Likewise, such a tortfeasor cannot be held responsible or obligated for any part of a settlement paid which is in excess of what is reasonable. Section 768.31(2)(d). Therefore, under the scheme prescribed by section 768.31, all liability for the tort claim must have been extinguished as to any joint tortfeasors against whom a right of contribution is sought to be exercised. Therefore, when such a claim to contribution has been assigned and is sought to be exercised, as here, it is not the underlying tort which forms the basis for the action, it is instead the right of contribution that arises once the tort liability has been settled. That right of contribution is a right separate and apart from the tort, created by statute and, therefore, assignable. Notarian v. Plantation AMC Jeep, Inc., 567 So.2d 1034 (Fla. 4th DCA 1990).
Finally, we must address and reject appellees' argument that the very terms of the settlement agreement itself and section 768.31(5)(b) extinguish any rights, including the assigned right of contribution, that Robarts might have had. Appellees argue that paragraph (a) of the Settlement Stipulation *916 and Assignment of Contribution Claim work to divest Robarts of any claims she might have against St. Joseph's, including the appellee doctors' assigned right of contribution. Paragraph (a) of the settlement stipulation states that Robarts releases St. Joseph's from any claims "she may have had, may now have, or may later have against them, by reason of any matters, cause, happening or thing occurring prior to, up to and including the date of this release."
Several things dictate against the validity of appellees' argument. It is so well settled as to be without dispute that an instrument must be read in its entirety in construing the intent of the parties to the instrument. It is equally true and a corollary to the preceding statement that various parts of an instrument should not be read in isolation to create a contradiction in terms and defeat the clear intent of the instrument when read as a whole.
It is clear to us, for several reasons, that the language in paragraph (a) does not release St. Joseph's from Robarts' assigned claim for contribution. As we hereinbefore discussed, section 768.31(2)(d) mandates that a claim for contribution cannot exist in favor of a settling tortfeasor unless the settlement also releases the joint tortfeasors against whom the contribution is sought. Therefore, since Drs. Diaco and Hochberg had no right to contribution against St. Joseph's until the settlement was executed, Robarts could not have acquired those rights by assignment until the settlement was accomplished. The right to contribution and the right of assignment thereof must necessarily follow after the completion of any settlement. Robarts' release to St. Joseph's of any claims "up to and including the date of this release" clearly does not contemplate her rights subsequently acquired by the assignment of the appellee doctors' rights to contribution.
The format of the settlement agreement itself enforces our interpretation of the effect of paragraph (a) in this regard because it is the very next paragraph, paragraph (b), of the settlement that operates to assign and transfer to Robarts the doctors' rights to contribution. Paragraph (c) also strengthens our conclusion that Robarts' assigned right to contribution was not extinguished by the agreement. Paragraph (c) explicitly provides that any lawsuit brought against St. Joseph's shall be brought in Robarts' name as assignee and in her official capacity as personal representative of her deceased husband's estate. Paragraph (c) also has a concluding sentence that states: "Provided that such designation does not affect the validity of this assignment."
We must also address, in analyzing appellees' final argument, an apparent incongruity that appears in section 768.31. As we have observed, section 768.31(2)(d) clearly requires that before a right of contribution arises in favor of a settling tortfeasor who has paid more than his pro rata share of the liability, any joint tortfeasor who might be subject to contribution must also be released from liability for the underlying tort by the settlement agreement. Section 768.31(5), however, provides the following:
(5) RELEASE OR COVENANT NOT TO SUE.  When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and,
(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

(Emphasis supplied.) Read literally, section 768.31(5)(b) could be construed to take away the very right of contribution that section 768.31(2)(d) creates. Clearly, this was not the intent of the legislature in enacting those sections, so we must construe *917 the legislative intent and choice of words to reach a reasonable result.
We, therefore, construe section 768.31(5)(b) to release from any liability for contribution only those tortfeasors who, as a signatory party to a settlement agreement, have paid something to the party injured by the tort and have received back from that injured party a release from liability. We hold that where a settlement is entered into by an injured party and a joint tortfeasor who has paid more than his pro rata share of the liability for the tort, and the settlement gratuitously releases other joint tortfeasors, those gratuitously released joint tortfeasors are not, by reason of the wording of section 768.31(5)(b), released from the obligation of contribution created by section 768.31(2)(d) to their joint tortfeasor who has entered into, paid for and procured the settlement. Our interpretation of the appropriate interrelationship between sections 768.31(2)(d) and 768.31(5) is supported by Dean v. Bennett M. Lifter, Inc., 336 So.2d 393 (Fla.3d DCA 1976).
In that case, one joint tortfeasor named Hermetet had paid to the injured party $10,000 and thereby secured a release not only for himself but for all other joint tortfeasors. Our colleagues in Dean held that the release procured by Hermetet effectively absolved all of the joint tortfeasors from their liability for the tort and stated: "When Hermetet, who is not a party to this action, paid the $10,000.00, he secured the release for himself and bought the possible right to proceed against any other joint tortfeasors for contribution. See Lincenberg v. Issen, Fla. 1975, 318 So.2d 386." 336 So.2d at 395.
Also on point with our interpretation of section 768.31(5) is the Colorado Court of Appeals decision in Miller v. Jarrell, 684 P.2d 954 (Colo. App. 1984). In that case, the Millers and Jarrells were joint tortfeasors in an automobile accident and were jointly sued by the injured parties. Subsequently, the Millers settled with the injured parties and releases were obtained that not only released the Millers but also the Jarrells. However, just as in the case before us, only the Millers and the injured persons were "parties" to the settlement. Colorado had adopted the Uniform Contribution Among Tortfeasors Act. The Millers sued the Jarrells for contribution. The Jarrells moved to dismiss the Millers' action for contribution arguing that Colorado's equivalent to Florida's section 768.31(5)(b) barred the action for contribution since the release procured by the Millers released the Jarrells as well as the Millers. The Colorado court disagreed, interpreting the Colorado equivalent of our section 768.31(5)(b) even more narrowly than we find necessary. The Colorado court, in holding that the Millers retained their right of contribution against the Jarrells, stated:
The Jarrells argue that this settlement agreement, which releases them from liability, bars the Millers from seeking contribution because § 13-50.5-105(1)(b) provides that such an agreement "discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor." However, § 13-50.5-105 applies only when such a release is given "to one of two or more persons liable in tort for the same injury or the same wrongful death." (emphasis added) Here, the release was given to all persons liable in tort for the same injury.
... .
Here, the Millers paid the injured parties the full amount of the settlement, and then sought contribution from the Jarrells for their pro rata share. Section 13-50.5-102(4), C.R.S. (1983 Cum.Supp.), provides: "A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what was reasonable."
Here, the settlement with the injured parties did extinguish all liability, including that of the Jarrells, from whom contribution was sought. Therefore, this statute does not prevent the Millers from recovering contribution from the Jarrells where liability was extinguished by the settlement. Thus, the trial court was *918 correct in applying § 13-50.5-105, and in entering judgment in their favor for contribution and costs.
Although it would have been more provident to have included the Jarrells as parties to the settlement agreement if possible, we do not perceive it to be unfair to allow the Millers to recover contribution from them. The Jarrells still had the recourse of establishing that they were not jointly or severally liable in tort for the same injury to person or property, or that the Millers paid more than what was reasonable in the settlement.
In fact, to prohibit the Millers from getting contribution would make for an inequitable distribution of the loss, and would result in the Jarrells being unjustly enriched through the Millers' complete payment of a joint obligation. See W.D. Rubright Co. v. International Harvester Co., 358 F. Supp. 1388 (W.D.Pa. 1973); Carter v. E.T. & W.N.C. Transportation Co., 35 Tenn. App. 196, 243 S.W.2d 505 (1949). The statute does not compel such an inequity.
684 P.2d at 956-957.
We, therefore, reverse and remand this case for reinstatement of Robarts' amended complaint. On remand and at any trial of this cause, St. Joseph's will be able to fully try the remaining issues of whether it is in fact jointly or severally liable with Drs. Diaco and Hochberg for the ultimate death of Mr. Robarts, whether the doctors paid more than was reasonable in settlement of the claim and the respective pro rata shares of the joint tortfeasors in the entire liability.
PARKER and PATTERSON, JJ., concur.