PAUL R. RUBENSTEIN & others,[1] trustees, vs. ROYAL
INSURANCE COMPANY OF AMERICA.

No. 96-P-0868.

Suffolk. February 11, 1998. - July 28, 1998.

Present: GREENBERG, LAURENCE, & BECK, JJ.

*Assignment. Contract,* Assignment. *Insurance,* Contribution among insurers.
*Contribution among Tortfeasors. Champerty.*

An insurer's assignment to its insured, set forth in a settlement agreement
between them, of its rights to contribution against other insurers, for legal
fees and expenses the insurer had incurred under a reservation of rights in
defending an action brought against the insured, was a valid assignment
[245-248] and was not void on the ground that it was champertous
[248-249].

CIVIL ACTION commenced in the Superior Court Department on
October 7, 1994.

The case was heard by *Peter M. Lauriat,* J., on a motion for
summary judgment.

*Alan B. Rubenstein* for the plaintiffs.

*Molly H. Sherden* for the defendant.

GREENBERG, J. This appeal arises from the allowance of a mo-
tion for summary judgment on a complaint for contribution.
The plaintiffs, formerly trustees of a real estate trust which
owned a textile mill in Newton (trustees), were sued in 1989 by
the general partners of a development company (developers)
who had purchased the property from the trustees in 1985.
When the developers discovered that number six fuel oil had
escaped from an old underground tank located on the property,
they brought a civil action against the trustees pursuant to G. L.
c. 21E, §§ 4 & 5, and G. L. c. 93A, § 11 (underlying action).
Royal Insurance Company of America (Royal) and four other

[1]Bennett B. Rubenstein, John B. Rubenstein, and Lee A. Rubenstein, all as
trustees of Security Mills Realty Trust.

insurers disclaimed coverage for damages claimed against the trustees; only Wausau Underwriters Insurance Company (Wausau) agreed, under a reservation of rights, to advance the trustees their legal fees and expenses in defending the underlying action. As a result, the trustees brought an action under G. L. c. 231A for a judgment declaring that the developers' claims were within the scope of the policies issued by Royal and the four other insurers. In June, 1991, the trustees agreed to settle the underlying action by paying to the developers $425,000. By that time, Wausau had paid $261,902.84 in legal fees and expenses in defending the trustees. The trustees continued to pursue the declaratory judgment action, which became primarily an action for damages in which they sought to recover the $425,000 paid to settle the underlying action. On October 12, 1994, a Superior Court judge ruled that Royal had a duty to defend them and was obligated to reimburse them for the reasonable costs of defending that action.[2] We affirmed the judgment in that case. See *Rubenstein* v. *Royal Ins. Co.*, 44 Mass. App. Ct. 842 (1998).

Meanwhile, in August of 1994, the trustees executed a separate settlement agreement with Wausau in which they agreed to release Wausau from any obligation to reimburse them for any portion of the $425,000 ultimately paid to settle the underlying action. Wausau, in turn, agreed to release the trustees from any obligation to reimburse it for the $261,902.84 for defense costs it had advanced. Wausau also agreed to assign to the trustees its contribution rights against the other insurers, including Royal, arising from its payment of those defense costs (assignment agreement).

When the trustees sought to exercise this right of contribution by filing a second declaratory judgment action against Royal, a Superior Court judge granted Royal's motion for summary judgment. He ruled that even if the assignment were valid, the trustees were barred from recovery because it would amount to a double recovery for the same loss and, therefore, violated public policy. The issue, thus framed, is whether, under the assignment agreement, the trustees may recover legal expenses which they did not pay, and if so, whether the assignment of Wausau's contribution claim is champertous.

In 1962, the Legislature enacted St. 1962, c. 730, § 1, which was modeled on the Uniform Contribution Among Tortfeasors

---

[2]The trustees had settled with the other insurers.

Act (contribution act). See G. L. c. 231B, §§ 1-4. The statute is silent as to whether a right of contribution can be assigned to a nontortfeasor, and thus the question of assignability must be answered in accordance with common law principles. It is well settled that most property damage claims and contract actions are assignable. See *Larabee* v. *Potvin Lumber Co.*, 390 Mass. 636, 640-643 (1983) ("[t]here is no general obstacle in principle to the assignment of a cause of action for tort"). See also *Goldman* v. *Noxon Chem. Prods. Co.*, 274 Mass. 526, 529 (1931) (plaintiff's written assignment of his claim for commissions to his attorney was valid). On the other hand, claims for personal injury cannot be assigned, *General Exchange Ins. Corp.* v. *Driscoll*, 315 Mass. 360, 363 (1944), nor can some contract rights be assigned when expressly forbidden by the terms of a contract or by statute, see *American Employers' Ins. Co.* v. *Medford*, 38 Mass. App. Ct. 18, 22 (1995), or when substitution would materially change the duty or risk of the obligator. *Garber's Auto Rental Inc.* v. *Genoa Packing Co.*, 2 Mass. App. Ct. 298, 301-302 (1974).

There is no dispute that absent these extraordinary circumstances, a cause of action may be assigned and the assignee may bring the suit in its own name. See *Gill* v. *Richmond Coop. Assn., Inc.*, 309 Mass. 73, 76 (1941); *American Employers' Ins. Co.* v. *Medford*, 38 Mass. App. Ct. at 22. In a more recent case, *Campione* v. *Wilson*, 422 Mass. 185, 192-193 (1996), it was held that an assignment integrated into a settlement agreement with the assignor, as in the case here, is valid.

When a claim is assigned, the assignee stands in the shoes of the assignor and is in the same position as the assignor would have been in without the assignment. See *Graves Equip., Inc.* v. *M. Dematteo Constr. Co.*, 397 Mass. 110, 112 (1986). See also *Grise* v. *White*, 355 Mass. 698, 701 (1969). Although this case involves the assignment of a right of contribution, we discern no reason why the trustees should not recover. An action for contribution is not an action of a personal nature, but rather a claim for equitable division of damages. Wausau's claim is for recovery for overpayment of the share of defense costs paid to defend the trustees in the underlying action. No principle, established by decision or otherwise, requires a different result even though the trustees received the benefit of Wausau's payment for counsel fees in the underlying case, as long as Royal is not required to pay twice. *Barry* v. *Duffin*, 290 Mass. 398, 402 (1935).

The policies underlying the contribution act support this result. First, an assignment of the right of contribution encourages settlement. It provides an additional means of settling the underlying case and gives the trustees an opportunity to obtain contribution from various insurers. See *Medical Malpractice Joint Underwriting Assn. of Mass.* v. *Goldberg*, 425 Mass. 46, 61 n.34 (1997) ("[p]romoting the settlement of disputes is desirable"); *Polaroid Corp.* v. *Travelers Indem. Co.*, 414 Mass. 747, 765 (1993) (settlement of disputes "a worthy goal because of court congestion"). By successfully litigating the coverage issue, the trustees were able to recoup the funds expended to settle the underlying case. Royal should not be rewarded for its refusal to participate in the defense of a case which we have decided fell within its policy's coverage.

Second, allowing the assignment to the trustees in this case promotes the equitable sharing of damages. See *McGrath* v. *Stanley*, 397 Mass. 775, 781 (1986) (purpose of G. L. c. 231 is to achieve a more equitable distribution of the plaintiff's damages among those jointly liable). The same might be said of the contribution claim in the present case: requiring Royal to pay its pro rata share of the defense costs advanced by Wausau will deter insurers from stonewalling their defense obligations while other insurers are forced to shoulder more than their share involving the same risk.

Royal's principal argument is that Wausau has already paid the trustees' defense costs, and therefore, the trustees' recovery in this case amounts to an unjustified windfall. Two cases cited and relied upon by the motion judge are inapposite. *McGrath* v. *Mishara*, 386 Mass. 74 (1982), involved claims by tenants of a rent controlled apartment against their landlord for improperly increasing their rent, and then, after the tenants refused to pay the increase, improperly deducting the increase from their security deposit. A Housing Court judge found that the landlord's single act of withholding the security deposit in July, 1976, violated separate provisions of the Boston Rent Control Ordinance, G. L. c. 186, § 15B (governing improper retention of a tenant's security deposit), and G. L. c. 93A, and awarded the tenants multiple damages under each of those statutes. The final judgment consisted of the sum of the damage award under each of the three statutes. In reversing the aggregate award of damages, the Supreme Judicial Court held that although the statutes had concurrent application, it was error to have awarded

cumulative damages for the same wrong. *Mishara*, 386 Mass. at 83-84. Thus, *Mishara* speaks to a situation not presented in the instant case, where a single wrong gives rise to multiple causes of action between the same parties, and holds only that the damages awarded on each cause of action cannot be cumulative. *Mishara* does not involve the assignment of a cause of action to a different party.

*Tritsch* v. *Boston Edison Co.*, 363 Mass. 179 (1973), involved claims against joint tortfeasors. The Supreme Judicial Court held only that a defendant is entitled to present evidence of the amount received by the plaintiff in settlement with another joint tortfeasor on account of the same injury. *Tritsch*, 363 Mass. at 182. That result follows from the express provisions of the contribution act, G. L. c. 231B, § 4(*a*), which mandates the reduction of the plaintiff's claim against the nonsettling tortfeasor by the amount of the settlement received from the settling tortfeasor. *Tritsch* is therefore inapplicable to the present case, where the trustees are seeking to recover Wausau's damages, not their own.

The trustees' theory of liability — permitting recovery on an assignment of contribution rights even though it might provide an additional recovery for the same loss sustained — has been recognized in a number of other jurisdictions. See *Bush* v. *Superior Court*, 10 Cal. App. 4th 1374 (1992); *Robarts* v. *Diaco*, 581 So. 2d 911, 915 (Fla. Dist. Ct. App. 1991); *Puckett* v. *Empire Stove Co.*, 183 Ill. App. 3d 181 (1989). The *Robarts* case is particularly analogous to the circumstances presented here. The settlement of the underlying case (a medical malpractice wrongful death claim brought by the decedent's estate) involved an assignment of the defendant doctors' right of contribution against another defendant — the hospital in which the surgery took place. The *Robarts* court acknowledged that the plaintiff might recover more than full compensation for the injury. In upholding the assignment, the court emphasized that any surplus recovery would arise, not from the malpractice claim, but rather from "the right of contribution that arises once the [medical malpractice claim] has been settled." *Robarts*, 581 So. 2d at 915.

Finally, the judge declined to declare the assignment void on the grounds that it was champertous, as asserted by Royal. The judge's analysis, based as it was on the applicable case law at the time of his decision, was correct. See *Pupecki* v. *James*

*Madison Corp.*, 376 Mass. 212, 219 (1979); *Berman* v. *Linnane*, 424 Mass. 867, 870 (1997). More recently, however, the Supreme Judicial Court has extinguished what little life remained in that ancient principle. See *Saladini* v. *Righellis*, 426 Mass. 231, 235 (1997) ("[w]e also no longer are persuaded that the champerty doctrine is needed to protect against the evils once feared"). The focus is now upon whether a challenged agreement to finance a law suit involves excessive fees or whether "recovery by a prevailing party is vitiated because of some impermissible overreaching by the financier." *Id.* at 236. Neither factor appears in this case.

The judgment is reversed, and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*