Locke, Jeffrey A., J.
This matter comes before the Court on motion of the defendant/plaintiff-in-counterclaim Commercial Union Insurance Company (“Commercial Union”) for an assessment of damages against plaintiff/defendant-in-counterclaim Robert T. May (“May”). The motion follows from a dismissal of the plaintiffs claims and judgment in favor the Commercial Union on its counterclaims entered by the Court (Lu, J.) on June 23, 2006.
May initiated suit against Commercial Union in July 2002, alleging a breach of contract and violation of G.L.c. 93A based on Commercial Union’s refusal to pay for fire losses on May’s home in Gardner. According to May’s complaint, a fire occurred on July 30, 2000, causing extensive damage to property that was covered by a policy of insurance issued by the defendant and in effect at the time of the fire. Commercial Union filed its Answer and asserted counterclaims for fraud and breach of contract. The counterclaims were based on Commercial Union’s claim that the plaintiff intentionally set the fire or solicited another to set the fire and thereafter submitted false information to support his claimed loss.[1] Commercial Union also paid two mortgage holders, GFA Federal Credit Union and Associates Home Equity Services, a total of $140,000 (represented to be the policy limits).
On May 22, 2006, the case was called for a status hearing and the plaintiff failed to appear. The Court ordered that the case would be dismissed in 30 days unless the plaintiff appeared. He did not. Consequently, a judgment of dismissal (without prejudice) entered against the plaintiff, and judgment in favor of Commercial Union entered on its counterclaims. The matter was subsequently set down for a hearing on Commercial Union’s motion for an assessment of damages on December 6, 2006. On that date, the plaintiff appeared pro se, challenging the amount of the damage award sought by Commercial Union.[2]
In general under either a tort or contract action, a prevailing party is entitled to recover such damages as are a natural and probable consequence of the wrong done. Upon the determination that a breach of contract has occurred, the non-breaching party may recover damages for losses that were reasonably foreseeable by the parties and that are a natural and proximate result of the breach. International Totalizing Systems, Inc. v. Pepsico, Inc., 29 Mass.App.Ct. 424, 430 (1990). In an action based on deceit or misrepresentation, the measure of damages includes, “. . .all ‘out of pocket’ expenses incurred in connection with the transaction, so as to restore the status quo ante, as if the transaction had never occurred.” VMark Software, Inc. v. EMC Corp., 37 Mass.App.Ct. 610, 619 (1994), citing Zimmerman v. Kent, 31 Mass.App.Ct. 72, 82 (1991). See also Rice v. Price, 340 Mass. 502, 5.10-11 (1960) (recognizing “out of pocket” rule in addition to “benefit of the bargain” rule for damage determination).
Commercial Union seeks damages in the amount of $176,150.72.[3] This is comprised of payments made by the company to pay off the mortgages ($140,000), and expenses paid to various investigators, consultants and accountants that were used to investigate the loss claim (totaling $36,150.72). Accompanying the motion for a damage assessment is an Affidavit of Gregory Coolidge, an employee at OneBeacon Insurance Company, successor in interest to Commercial Union, attesting to the amounts paid out by the company and supported by copies of invoices or checks demonstrating the payments. The supporting documentation details the services performed, the date of service, time expended, and identifies the individual involved in performing the service. As well, Commercial Union included copies of cancelled checks evidencing actual payments made for invoiced services. The documentation is comprehensive and detailed, permitting the Court to find (which I do) that Commercial Union expended a total of $176,150.72 in connection with the claim filed by the plaintiff.
May challenges the damage claim generally, and in two specific ways. Generally, he objects to an assessment for Commercial Union’s investigative costs because Commercial Union paid investigators to build an arson case for prosecution by the local district attorney. May’s objection is philosophical — he asserts that it is unfair that he should have to pay for the costs of his own prosecution. The objection appears to be built on a factually correct foundation; the invoices demonstrate that Commercial Union hired fire cause and origin experts to investigate the fire, collect and test samples, and assemble evidence showing that the *658 house fire was intentionally set. As well, Commercial Union hired financial experts to conduct a financial background investigation on the plaintiff. Once the investigation was completed, the insurer (through counsel) met with the district attorney’s office and presented its investigation. According to the plaintiff, Commercial Union’s efforts constituted the bulk of the evidence used by the prosecutor in May’s criminal trial.
This fact does not, however, preclude Commercial Union from recouping its payments to the extent such payments were a consequence of its investigation of May’s claim. Efforts to verify a claim, including appraisals and in the case of a fire, a cause and origin determination, are unquestionably connected with determining the existence and extent of a claimed loss. As well, expenses related to the collection and storage of evidence associated with the loss claim are to be expected. The investigation into May’s financial situation preceding and at the time of the fire was also reasonably related to an investigation into the claim and expenses associated with the investigation are a direct consequence of the false claim. Because these expenses arose out of and flowed from May’s submission of a loss claim under the policy, they constitute consequential damages and the plaintiff cannot now deny responsibility for them simply because the investigation proved that his claim was false.
May’s objection has merit in one regard. One invoice paid by Commercial Union was from Engineering & Fire Investigations (“EFI”) for services and expenses incurred in October 2002. EFI conducted the fire cause and origin investigation and made a determination that the fire was intentionally set. EFI’s investigator, Jeffrey Lowe, was apparently a witness for the Commonwealth in May’s criminal prosecution. Invoice No. 6781049003 was dated October 8, 2002, and detailed charges for Lowe’s time spent reviewing the file, engaging in trial preparation with the assistant district attorney, and testifying in court on the criminal case. As well, EFI billed Commercial Union for mileage associated with Lowe’s travel. Witness costs in a criminal case are ordinarily borne by the Commonwealth and travel-related expenses are governed by statute. It cannot be said that these costs were directly connected with the investigation of May’s claim for coverage, rather they arose out of Lowe’s participation in the criminal prosecution. Although Commercial Union paid EFI for Lowe’s participation, it did so gratuitously and cannot pass those costs on as recoverable damages. Therefore, $1,221 will be deducted from the amount sought by Commercial Union.
May also challenges the amount of EFI’s bill. He asserts that Jeffrey Lowe testified at the criminal trial that he had expended between 35 - 40 hours on this investigation at a rate of $95.00 per hour, which would total at most $3,800 in charges rather than the $9,115 bill that was submitted. As noted above, the Court is deducting that portion of Commercial Union’s request for payments to EFI relating to Lowe’s participation in the criminal trial. The balance of monies attributed to EFI are explained in the detailed invoices from EFI and constitute charges for various storage and other expenses and fees.
Finally, May challenges Commercial Union’s request for judgment on the $140,000 paid on claims from two mortgage holders. May does not contest that Commercial Union paid the claims or that they were related to the fire loss, but claims that the payments resulted in an assignment or purchase of the mortgages to Commercial Union. According to May, Commercial Union now stands in the position of the mortgagees and therefore has not been damaged. In response, Commercial Union (which failed to disclose that they had received the mortgages) asserts that the principal value of the mortgaged property at 18 Guild Street was in the structure that was consumed by fire, and the value of the property is now less than the value of the mortgages. Without delving into the current fair market value of 19 Guild Street, the Court presumes that the property, even if only as a parcel of land, has some monetary value against which the mortgages apply.
Unless authorized by specific statute or decisional law, see, e.g M.G.L.c. 93A; McGrath v. Mishara, 386 Mass. 74, 85-86 (1982), the prevailing party in a breach of contract or deceit case is not entitled to recover cumulative or multiple damages. As applied to the instant case, this rule provides that Commercial Union is entitled to judgment in the amount of $140,000 for its payments to the mortgagees, unless by exercising their rights under the mortgage documents (as assignee) they are able to recoup the amounts paid on each mortgage. They cannot, however, receive judgment for the full amount and continue to hold May responsible on the mortgage loans.
Therefore, the Court will order judgment in favor of Commercial Union on each of the mortgage claims to the extent of the difference between the amount of the claim as paid by Commercial Union, and the total amount received through the exercise of its rights as assignee of each mortgage. In the event that Commercial Union forecloses on either or both of the mortgages, costs associated with foreclosure or sale are deductible from the above calculation. In the event either or both of the mortgages are discharged without further collection, then judgment shall be equal to the amount paid by Commercial Union.

ORDER

Judgment shall enter in favor of defendant/plaintiff-in-counterclaim Commercial Union Insurance Company in the amount of One Hundred Seventy Four Thousand Nine Hundred Twenty-Nine Dollars and Seventy-Two Cents ($174,929.72), subject to the following conditions:
*659 1. $69,667.72 of such judgment, related to the payment of a claim by GFA Federal Credit Union, shall be offset by any monies received by Commercial Union as assignee of GFA Federal Credit Union, excluding costs associated with the exercise of rights under the mortgage; and
2. $ 70,332.28 of such judgment, related to the payment of a claim by Associates Home Equity Services, shall be offset by any monies received by Commercial Union as assignee of Associates Home Equity Services, excluding costs associated with the exercise of rights under the mortgage.

The plaintiff was indicted, tried and convicted of arson in the Worcester Superior Court (Crim. No. 2001-0070) and sentenced to a term of imprisonment. His conviction was affirmed by the Massachusetts Appeals Court in 2005.

The plaintiff did not move to vacate or otherwise challenge the dismissal. His sole objection was to the amount of damages sought by the insurance company.

The claimed damages do not include attorneys fees and, although an award of attorneys fees was requested in the motion pursuant to M.G.L.c. 231, §6F, counsel waived any claim for attorneys fees during argument before the Court.