NORMAN BERMAN & another[1] *vs.* THOMAS LINNANE.

Suffolk. January 8, 1997. - May 9, 1997.

Present: WILKINS, C.J., O'CONNOR, GREANEY, FRIED, & MARSHALL, JJ.

*Champerty. Assignment. Contract,* Assignment, Settlement agreement. *Attorney at Law,* Contingent fee agreement. *Practice, Civil,* Attorney's fees. *Evidence,* Hearsay, Opinion, Relevancy and materiality.

Plaintiff attorneys, who were creditors on a former client's note to secure the amount due the plaintiffs as attorney's fees, were entitled to recover the amount of the note plus interest, plus costs and attorney's fees for pursuing the client's claims against a third party as assignees and as attorneys; where the assignment also set forth a contingent fee agreement that did not satisfy S.J.C. Rule 3:05, the plaintiffs were not entitled to any further recovery under the assignment. [870-872]

A party to a settlement agreement did not demonstrate that he was entitled to be excused from performance by the other party's alleged material breach of the agreement. [872-873]

No reversible error appeared in various evidentiary rulings by the judge in a civil matter. [873-874]

CIVIL ACTION commenced in the Superior Court Department on August 20, 1991.

The case was tried before *Peter M. Lauriat,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert S. Marcus,* pro se.

*John T. Ronan* for the defendant.

*Matthew E. Miller,* for Norman Berman, was present but did not argue.

WILKINS, C.J. The plaintiffs, members of the bar of the Commonwealth, brought this action against their former client Edward Carroll[2] to collect on a promissory note in the amount of $71,100 plus interest (count I) and to reach and

---

[1]Robert S. Marcus.

[2]Edward Carroll was also named a defendant, but a default judgment was entered against him.

apply the obligations of the defendant, Thomas Linnane, to Carroll pursuant to an October, 1989, settlement agreement that Linnane and Carroll made to resolve disagreements concerning their failed real estate partnership (count II). While the action was pending, Carroll assigned to the plaintiffs all claims that he had against Linnane pursuant to the settlement agreement. Thereupon, the plaintiffs were allowed to amend their complaint to add a count alleging, as assignees, a breach of contract claim against Linnane (count IV).[3]

A judge in the Superior Court ruled that Carroll's assignment of his rights to the plaintiffs was champertous and void. He directed the entry of judgment for Linnane notwithstanding the jury's verdict in the plaintiffs' favor on count IV. The plaintiffs appealed from the judgment for Linnane on count IV. On count II, the judge allowed the plaintiffs to recover against Linnane the amount of their default judgment against Carroll. Linnane appealed from the judgment against him, asserting various errors of law. We transferred the appeals here on our own motion.

We recite facts that the judge found in ruling on the plaintiffs' claim against Linnane to reach and apply his obligations to Carroll (count II) and that the jury would have been warranted in finding, as they did, that Linnane was in breach of the settlement agreement (count IV).

Carroll and Linnane had been partners in a real estate nominee trust through which they purchased and developed real estate in the Boston area. In 1987 and 1988, the plaintiff Marcus represented Carroll in litigation against Linnane arising out of the failed partnership. In 1988, the plaintiff Berman succeeded Marcus as counsel. In October, 1989, Carroll and Linnane settled their claims against each other and entered into the settlement agreement that we have previously mentioned. That agreement provided that each would take ownership of particular parcels of land. Carroll was to receive property in Boston on Brookfarme Road and Seymour Road in the West Roxbury section and on Emmet Street in the Hyde Park section. Carroll owed Linnane $27,000, the payment of which he agreed to secure by a mortgage on the Emmet Street property. Carroll also agreed to pay Linnane his

---

[3]Count III concerned injunctive relief and is not before us. A default judgment on count I was entered against Carroll. See note 2 above.

share of the partnership debts, then estimated at approximately $32,000. If Carroll could not pay that debt, obtain a mortgage on the Brookfarme Road property or sell it to cover his obligation for partnership debts, Carroll agreed that he would secure that obligation by giving Linnane a mortgage on the Brookfarme Road property. All deeds were to be delivered on or before November 30, 1989.

On November 30, 1989, Carroll was ready, willing, and able to perform his obligations under the settlement agreement, but Linnane was not. Carroll gave Linnane until December 15, 1989, to deliver deeds to Carroll. The situation repeated itself so that, in the same circumstances, Carroll granted successive extensions to Linnane until January 31, March 31, and December 31, 1990. On December 31, 1990, Linnane failed to deliver deeds to Carroll who was again ready, willing, and able to perform his obligations.

On May 25, 1990, Carroll had delivered to the plaintiffs a promissory note in the amount of $71,100, with interest at ten per cent a year, which represented the amount due them for legal services in Carroll's litigation with Linnane. The note was purportedly secured by a mortgage on the West Roxbury properties (Brookfarme Road and Seymour Road) that Linnane was to convey to Carroll pursuant to their settlement agreement. Carroll defaulted on the note. This action was commenced in August, 1991.

In July, 1992, before this case was tried, Carroll assigned to the plaintiffs all his claims against Linnane for breach of the settlement agreement. The assignment agreement provided that any amounts recovered would go first to satisfy what Carroll owed the plaintiffs, then successively to pay all costs incurred in prosecuting the claim, the plaintiffs' reasonable attorney's fees in this action, and forty per cent of the balance to be paid to the plaintiffs and sixty per cent to Carroll. It is this agreement that the judge later ruled was champertous and unenforceable.

The judge ruled, and the jury found, that Linnane violated the settlement agreement and assessed damages at $686,570. Thereafter, new counsel for Linnane successfully raised the champerty defense against the plaintiffs' right to recover as assignees of Carroll for Linnane's breach of the settlement agreement. Final judgment was entered on count II awarding the plaintiffs relief on their claim to reach and apply Carroll's

claim against Linnane.[4] Final judgment was entered for Linnane on count IV.

## THE PLAINTIFFS' APPEAL

The plaintiffs challenge the judge's ruling that they could not as assignees recover on Carroll's claim against Linnane for breach of contract. The judge determined that the agreement to permit the plaintiffs to assert Carroll's rights against Linnane was champertous and unenforceable. We conclude that the agreement is not unenforceable and void as champertous.

If a party has an interest independent of and prior to the allegedly champertous arrangement, or even the possibility of an interest, in the subject litigated, the agreement to carry on the litigation at his own expense in consideration of having part of the recovery is not champertous and illegal. See *Reed v. Chase*, 238 Mass. 83, 86 (1921); *Williams v. Fowle*, 132 Mass. 385, 388-389 (1882). Cf. *Pupecki v. James Madison Corp.*, 376 Mass. 212, 219-220 (1978); *Sampliner v. Motion Picture Patents Co.*, 255 F. 242, 245 (2d Cir. 1918), rev'd on other grounds, 254 U.S. 233 (1920).

The plaintiffs, as assignees of Carroll, had such a prior independent interest in Carroll's claim against Linnane sufficient to entitle them to maintain a claim against Linnane on count IV of the amended complaint. The plaintiffs were creditors of Carroll, who had defaulted on a note that he had given them in May, 1990. The note was secured by a mortgage on certain properties that were to be conveyed to Carroll pursuant to his 1989 agreement with Linnane. The plaintiffs, therefore, are entitled to recover from Linnane the total of (1) the amount due under count I, together with postjudgment interest at ten per cent a year (see *City Coal Co. of Springfield v. Noonan, ante* 693 [1997]), and (2) their costs and reason-

---

[4]Linnane was given the choice of paying the plaintiffs the amount of default judgment against Carroll ($71,100, together with interest and costs in this action) or conveying the Brookfarme Road, Seymour Road, and Emmet Street properties to Carroll after which the plaintiffs could levy on the properties, have the properties sold, and satisfy the default judgment from the proceeds.

able attorney's fees for pursuing claims against Linnane under count IV. They are, however, not entitled to recover more.[5]

When the plaintiffs undertook to pursue Carroll's claim against Linnane, assuring him of sixty per cent of any excess of the recovery over their litigation expenses and the amount Carroll owed them, they ceased to be adversaries and became counsel for Carroll. Indeed, at one place in their assignment agreement with Carroll, the plaintiffs are referred to as Carroll's "undersigned counsel."

The agreement by which Carroll assigned his rights was a contingent fee agreement that did not satisfy S.J.C. Rule 3:05, as appearing in 382 Mass. 762 (1981). That rule requires that the contingent fee agreement set forth: "(e) a statement that reasonable contingent compensation is to be paid for such services, which compensation is not to exceed stated maximum percentages of the amount collected; and (f) a stipulation that the client, in any event, is to be liable for expenses and disbursements." S.J.C. Rule 3:05 (5) (e), (f). The rule requires that the attorney's fee be reasonable.[6] S.J.C. Rule 3:05 (6). The assignment agreement between Carroll and the plaintiffs contains no statement that the contingent compensation shall be reasonable. Because that agreement first provides that the plaintiffs may collect a reasonable attorney's fee from the proceeds, the further provision that forty per cent of any excess recovery goes to the plaintiffs can only be an unreasonable fee.

The plaintiffs, therefore, are not entitled to recover additional amounts against Linnane in this action, that is, forty per cent of the difference between (a) Carroll's damages caused by Linnane's breach of the settlement agreement with Carroll and (b) the amount we rule that the plaintiffs are entitled to recover under count IV. The conclusion we have

---

[5]No attorney's fees are to be collected for services involved in count II. The promissory note does not provide for them in the case of an action to collect upon default.

[6]Rule 1.5 (a) of the proposed Massachusetts Rules of Professional Conduct forbids a lawyer to enter into an agreement for an illegal or clearly excessive fee. To be enforced against a client, a contingent fee must be reasonable. Comments [1A] and [7] to rule 1.5.

In a change from current requirements, the proposed rules provide that "a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter." Rule 1.8 (e) (1) of the proposed Massachusetts Rules of Professional Conduct.

reached in effect refuses to enforce a contract to pay an excessive and unreasonable fee (see *McInerney* v. *Massasoit Greyhound Ass'n, Inc.*, 359 Mass. 339, 348-351 [1971]) and may be viewed as enforcing the agreement as if it were security for Carroll's payment of his debt to the plaintiffs and reasonable attorney's fees and expenses incurred in pursuing Carroll's claim against Linnane (see *Smith* v. *Weeks*, 252 Mass. 244, 251-252 [1925]).[7]

## LINNANE'S APPEAL

Linnane argues that his failure to perform under the settlement agreement with Carroll was excused by Carroll's material breach of that agreement. He claims that Carroll was obliged to grant him a first mortgage on the Brookfarme Road property if Carroll had not obtained funds by the time of the closing to pay off his share of partnership debts. Linnane argues that Carroll's May 25, 1990, purported grant of a mortgage on the Brookfarme Road property to the plaintiffs made it impossible for Carroll to give Linnane that first mortgage. The settlement agreement did not, however, make the granting of a first mortgage a condition of the obligation of Carroll and Linnane to exchange their interests in certain properties. Assuming that the plaintiffs could successfully assert the priority of Carroll's purported unrecorded mortgage of property (to which he did not then hold title) over a mortgage to be given by Carroll to Linnane pursuant to an agreement of which the plaintiffs had knowledge, the object of the settlement agreement could have been achieved by Linnane's transferring the Brookfarme Road property to Carroll subject to a mortgage in favor of Linnane. Moreover, Car-

---

[7]If Carroll had not defaulted and had asserted his breach of contract claim directly against Linnane, Linnane would not have been entitled to plea champerty as a defense. See *Pupecki* v. *James Madison Corp.*, 376 Mass. 212, 220 (1978); 6A A. Corbin, Contracts § 1425, at 368 (1962). Where, however, the plaintiff in the action is, as here, an assignee of the claim sued on, the defendant may plead that the assignment is a champertous bargain. *Id.* at 369.

The plaintiffs expressly disavow advocating the elimination of the doctrine of champerty in Massachusetts. We do not, therefore, undertake to decide whether champerty has a continuing role in the law of the Commonwealth or whether, at least as to lawyers, other principles fulfil whatever purpose champerty once had. In this case, for example, the public policy against the recovery of excessive fees alone justifies our conclusion.

roll's execution of the note and mortgage to the plaintiffs occurred after numerous extensions of the closing date that Carroll granted at Linnane's request because of Linnane's refusal to perform.[8]

Linnane also argues that the judge committed reversible error in various evidentiary rulings. We conclude that he did not. We discuss the various challenges briefly.

(a) The judge did not err in permitting the plaintiff Berman to testify as to what Linnane had said at a deposition. The sole objection was that the testimony was hearsay. The judge correctly ruled that Linnane's statements were admissions by a party opponent. See *Brown* v. *Metropolitan Transit Auth.*, 341 Mass. 690, 695 (1961).

(b) The judge did not abuse his discretion in permitting Carroll to give his opinion of the value of the partnership property that Linnane should have conveyed to him. See *von Henneberg* v. *Generazio*, 403 Mass. 519, 524 (1988).

(c) The judge acted within his discretion in admitting as relevant to the 1989 breach of contract claim 1986 appraisals of certain properties that Linnane and Carroll mortgaged to a bank. No hearsay objection was raised at trial, and the hearsay issue is not before us. *Huber* v. *Huber*, 408 Mass. 495, 497 (1990).

(d) There was no justification for the admission of Berman's opinion that Carroll had lost $250,000 in profits because of Linnane's failure to convey real estate to him as agreed. Berman was not a real estate expert, and, in any event, he was not sufficiently acquainted with the properties to justify the admission of his opinion. This evidence could not, however, have been prejudicial because there was other evidence of substantially greater losses, and the jury awarded damages of over $686,000.

---

[8]There is nothing to Linnane's argument that a partnership bankruptcy proceeding made impossible his transfer of property to Carroll. The bankruptcy proceeding ended well before December 31, 1990, the final date to which Carroll granted an extension.

Also, Carroll's ability to carry out his obligation to give mortgages to Linnane was not, as a matter of law, unavoidably prevented by an injunction entered in another matter barring Carroll from encumbering any real estate. The plaintiff in that action, a judgment creditor of Carroll, would not be likely to object to a modification of that injunction to permit real estate to come into Carroll's name even if some of it would be subject to a mortgage in favor of Linnane.

(e) Because Linnane's counsel stated in his opening that his client had put his life savings into the venture with Carroll, the judge did not abuse his discretion in permitting evidence of Linnane's assets and income seeking to rebut the assertion.[9]

Finally, Linnane generally challenges the damages awarded and, without a record reference or specific argument, asserts that the judge's jury instruction on damages was inadequate. We need not resolve this point because the damages that Carroll sustained easily exceeded the total of (a) the amount that the plaintiffs may recover from Linnane pursuant to the judgment that we direct be entered on count IV and (b) the amount that Carroll owed Linnane as part of the settlement agreement.

## CONCLUSION

The judgment is affirmed as to count II. A new judgment shall be entered under count IV awarding the plaintiffs recovery against Linnane of the amount due to the plaintiffs under count I, together with postjudgment interest at ten per cent a year and costs and reasonable attorney's fees in pursuing the action against Linnane under count IV.

*So ordered.*

---

[9]We need not discuss other evidentiary rulings as to which Linnane did not preserve his appellate rights.