Brassard, J.
This case raises the question of what happens to a contract, namely a fee agreement, after a party’s death when performance, specifically, representation in the underlying matter, has not yet been accomplished. The plaintiff, Kevin J. Erb (“Erb”), who is an attorney, rendered his services as agreed, however, the estate of the deceased, Robert Lane, discontinued payments under the fee agreement. Erb represented Lane in two criminal trials, and represented Lane’s interest in an administrative action before the Massachusetts Lottery Commission (“Commission”). Erb has brought suit against the estate of Robert Lane (“Estate”) seeking to recover his attorneys fees as set out in fee agreements he entered into with *373 Lane and the executor of the Estate. Count I alleges breach of the contingent fee agreement; Count II alleges breach of the hourly fee agreement; Count III claims promissory estoppel; Count IV claims quantum meruit; Count v. alleges unjust enrichment; Count VI asks for declaratory reliefiand Count VII asks for injunctive relief.
The Estate, in refusing to pay, claims the attorneys fees are unreasonable and that the statutory requirements of G.L.c. 197 that set out procedures for bringing claims against an estate, including the so-called short statute of limitations, have not been met. It also asserts counterclaims for conversion and unjust enrichment (Count I), breach of fiduciary duty to the deceased and to the Estate (Counts II and III), and malpractice (Count IV). The Estate now moves for summary judgment on all of the claims, and Erb moves for partial summary judgment on two claims (Counts I and II) and all of the counterclaims.
For the reasons set out below, the court ALLOWS summary judgment on Count II for breach of the hourly fee agreement, and Counts III through VII insofar as they seek to recover on the hourly fee agreement, but DENIES summary judgment on Count I for breach of the contingent fee agreement and Counts III through VII insofar as they seek recovery for the contingent fee agreement. Further the court ALLOWS summary judgment on Counts II, III and IV of the counterclaims, but DENIES summary judgment on Count I of the counterclaim.
BACKGROUND
Both parties move for summary judgment. The undisputed and disputed facts are set out below.
On January 2,1993, Robert Johnson Lane (“Lane”), a man chronically ill with emphysema, now deceased, won two million dollars from a winning lottery ticket he purchased at the Happy Superette in Roxbury. The Commission refused to honor his claim to the prize, explaining that the ticket was one in a numerical sequence of tickets reported stolen. On January 4, 1993, Lane consulted an attorney, Melvin Ravech (“Ravech”).
Lane hired Ravech for his claim against the Commission, and entered into a contingent fee agreement on January 20th. Under that fee agreement Ravech would receive 15% of any recovery after a trial.[2] On January 22, 1993, Ravech and Lane learned from articles in the Boston Herald and the Boston Globe that the Commonwealth intended to indict Lane. Lane was in fact indicted for receiving stolen property and attempted larceny. Ravech agreed to represent Lane in the criminal matter.
On November 23,1993, Lane consulted Erb regarding the indictments against him and his claim against the Commission. Erb met with Lane at Lane’s home in Brockton. Prior to this meeting Erb had seen the minutes of the Grand Jury which indicted Lane. Present at this meeting were James Grier (who had power of attorney for Lane) and Grace Hamilton (who was Lane’s life partner). During the meeting Lane entered into a second contingent fee agreement with Erb for the claim against the Commission. According to the Estate, Erb arrived with written fee agreements, which Erb disputes. The contingent fee agreement reads in pertinent part:
CONTINGENT FEE AGREEMENT Date: 11/23/93
To be Executed in Duplicate
The Client Robert Lane retains the Attomey(s) Kevin J. Erb to perform the legal services mentioned in paragraph 1 below. The attorney agrees to perform the services faithfully and with due diligence.
1. The claim, controversy, and other matters with reference to which the services are to be performed are: Dispute with [the] Lottery Commission [of the] Commonwealth of Massachusetts
2. The contingency upon which compensation is to be paid is: recovery of money
3. The client is not to be liable to pay compensation otherwis [sic] than from amounts collected for him by the attorney, except as follows: see #5 below
4. Reasonable compensation on the foregoing contingency is to be paid by the client to the attorney, but such compensatio [sic] (including that of any associated counsel) is not to exceed the following maximum percentages of the gross: 15% if settled without suit; if suit is filed; if trial is begun; if appeal or new trial is undertaken.
5. The client is in any event to be liable to the attorney for his reasonable expenses and disbursements.
Lane also signed an hourly fee agreement for representation in the criminal matter. The agreement reads:
1. The Attorney shall do any and all necessary things in the legal representation of the Client relative to Commonwealth of Mass. vrs. Robert Lane.
2. The Attorney shall receive reasonable compensation from the Client for these services in the amount of 100. per hr.
A. Prior to commencing legal services for the Client, the Attorney shall receive a Retainer, whch [sic] shall not be refundable, in the sum of 0.00 ...
At a deposition on July 27, 1999, Erb responded to questions regarding the two fee agreements:
Q. What was the gist, if any, of the discussion between you and Mr. Lane regarding your fee agreement with the criminal matter?
A. I told him that my rate was $100 an hour. I had him sign an agreement. I brought it with me today.
*374 But as a practical matter I realized that he was indigent. There was no funds to pay an attorney for the criminal matter.
And if we were successful in the civil matter, I would not pursue a claim for the criminal case. It would have been somewhatl would have thought it would have been outlandish to be perfectly honest with you.
A. It’s a so-called retainer agreement and the retainer was zero. But I have never tried to collect on that fee, and I have no intention of trying to collect on that fee.
At a later deposition held on November 9, 2001 he stated, “I believe that in discussion [sic] this with Bobby, at some point I indicated to him that if we were successful in the civil matter against the Lotteiy, that I would in all likelihood consider not charging or not attempting [sic] to collect my fee.” The Estate contends Erb never intended to collect the hourly fee. The Estate points out, and Erb admits, that he did not keep record of his hours for the services he provided Lane in the criminal matter.
At the November 23, 1993 meeting with Lane, Erb did not realize that he would serve as co-counsel. Erb maintains that Lane knew he hired two attorneys and negotiated fee arrangements with each of them.
On January 18, 1994 a jury in the criminal trial returned without a verdict. The Commonwealth retried Lane, and in May of 1994, he was acquitted. After his acquittal, the Lotteiy Commission still refused to pay Lane.
At the first criminal trial, Ravech and Erb sought to undermine the Commonwealth’s case by showing Lane purchased the winning lottery ticket innocently. Prior to the second criminal trial, Erb learned that his barber’s mother purchased lottery tickets out of sequence. The Estate claims this should have been the focus of the preparation of the first criminal trial. Erb maintains that it was through his efforts that the defense was able to develop this evidence which led to Lane’s acquittal in the second criminal trial. Erb, however, testified during the November 9, 2001, deposition that he made unsuccessful attempts to purchase tickets out of sequence.
The Estate also urges that Erb did not play an active role in the first and second criminal trials because he did not question witnesses, or address the court or jury. It claims Ravech had no need for Erb’s services in either the civil or criminal cases. The Estate describes Erb as inexperienced, and maintains that he had never argued an appeal in the state or federal courts. Erb does not agree. In his affidavit he details his credentials and experience as a trial lawyer. Erb maintains that at the time he agreed to represent Lane he had had ten years of trial experience and several years of prior experience conducting investigations for the defense of indigent criminal defendants. He also states that at the beginning of his career his practice was almost exclusively criminal defense work. In addition, he claims that prior to the Commonwealth’s prosecution of Lane, the Commission had never lost a criminal case stemming from allegations of a stolen ticket.
Lane died on August 6, 1994, before the resolution of his claim for the two million dollar lotteiy prize. Lane’s will named James Grier (“Grier”) as executor, and the Plymouth Probate and Family Court appointed Grier temporary executor on August 29, 1994. Erb approached Grier and requested a fee agreement between Erb and the Estate for his continued representation of the Estate’s interest in the lotteiy prize. Grier signed a contingent fee agreement with Erb dated September 12, 1994. Under that agreement Erb would receive 15% if the claim was settled without a suit, and 20% after suit is filed.[3]
On September 14, 1994 Erb and Ravech presented their case at a full evidentiary hearing held at the Commission. The hearing lasted one day. The parties do not dispute that Ravech and Erb did not call any witnesses. They submitted the transcripts from both criminal trials and rested. Erb maintains that it was a planned strategy to not call any witnesses because the best witness, Lane, was deceased and other potential witnesses, including Lane’s family members, had credibility issues. Ravech and Lane planned to cross-examine the Commission’s witnesses. The parties do not dispute that at this hearing Erb did not address the hearing officer, submit a brief or conduct cross-examination. The Estate claims that Erb could not answer at his deposition how much time he spent preparing for the hearing before the Commission. Before the hearing, the Commission had not offered to pay the Estate anything on the lotteiy ticket claim.
On October, 20 1994, before the hearing officer rendered a decision, the Commission made an offer to settle. It agreed to pay the two million dollars over twenty years with the first payment retroactive to the date of winning.[4] At the time of this offer, Erb orally agreed with the Estate to accept his fees as the Estate was paid, i.e. over the twenty years. Thus, in 1994 the Estate received two payments from the Commission and paid Erb $30,000.00. In 1995, 1996, 1997 and 1998 the Estate paid Erb $15,000.00 each year.[5] To date, plaintiff has received a total of $90,000.00.
In July of 1998, the Probate Court removed Grier as executor and appointed the named defendant, Stephen Wainwright (“Wainwright”), as administrator de bonis non.[6] In 1999, the Estate refused to make a payment to Erb. Since then the Estate has made no payment to Erb. At this time, the Estate remains open and a final distribution is not anticipated before 2012.[7]
This present action was commenced on December 27, 1999 with the filing of a complaint in the Superior *375 Court. Erb filed notices of claim in Probate Court pursuant to G.L.c. §§9 and 13 on December 29, 1999.[8] Notice of the G.L.c. 197 Section 13 request was served on Wainwright. Erb claims the balance of 15% of 2,000,000.00 or $210,000.00. He also makes a claim for $100 per hour for legal services rendered under the hourly fee agreement.[9]
DISCUSSION
Summary Judgment Standard
Summary judgment is appropriate where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 643-44 (2002), citing Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991); Mass.R.Civ.P. 56(c). The court may grant summary judgment as to certain issues but not to others. Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the non-moving party’s case, or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis, 410 Mass. at 716. Once this is done, the burden shifts to the party opposing summary judgment. Pederson, 404 Mass. at 17. In determining whether there are genuine issues of material fact, the court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Community National Bank, supra at 553; Mass.R.Civ.P. 56(c). However, the party opposing summary judgment cannot defeat the motion simply by resting on the pleadings, and mere assertions that there are disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). The non-moving party must oppose the motion with admissible evidence on the issue in order to defeat the summary judgment motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
When presented with a motion for summary judgment, the court must consider the evidence in the light most favorable to the non-moving party. Beal v. Board of Selectman ofHingham, 419 Mass. 535, 539 (1995). In assessing whether each party has met its burden, the court is not permitted to weigh the evidence, to determine the credibility of any witness, or make any findings of fact. Kelley v. Rossi, 395 Mass. 659, 663 (1985).
The first major issue raised by the parties is whether the November 23, 1993, fee agreements survive the death of Lane and whether the claims relating thereto were timely and properly made. The second issue is the reasonableness of the fees. Finally Erb challenges the counterclaims of the Estate.
Fee Agreements
In Count I and Count II of his complaint, Erb seeks attorneys fees under the November 23, 1993 contingent fee agreement and the hourly fee agreement. The court considers whether those claims survive and whether they were timely and properly presented.

Survivability of the November 23, 1993 Fee Agreements

Erb claims his right to a fee under the November 23, 1993 hourly and contingent fee agreements survived Lane’s death on August 6, 1994. Lane was acquitted of the criminal charges against him in May of 1994. Therefore, Erb’s claim for fees under the hourly fee agreement depends upon whether he timely and properly presented his claim to the Estate, which is discussed in the following section. However, on the date of Lane’s death, August 6, 1994, Lane’s claim for two million dollars on the winning lottery ticket remained unresolved.
The general rule is the death of the client terminates the attorney’s authority to act on behalf of the client. Barnes v. Barnes, 291 Mass 383, 385 (1935).
One exception to this rule is where the client executed a contingent fee agreement. In In Re Agee’s Estate, 69 Utah 130, 252 P. 891, 896 (1927), an attorney brought an action to recover his contingent fee pursuant to an agreement entered into with the client before her death. In Re Agee’s Estate, 252 P. at 891. On appeal from demurrer dismissing his claims, the attorney argued, among other things, that he had an enforceable lien against the estate because he had entered into a contract during the life of his client, “by which his fee for services in such cases was contingent solely upon recovery of the fund in question . . . and that her administrator, defendant in this proceeding, continued said contract and agreement upon the same terms.” In Re Agee’s Estate, 252 P. at 895. The Court stated that “the death of a client does not revoke an attorney’s authority to proceed under a contract by which the attorney undertakes to prosecute to final adjudication a claim for an exclusively contingent compensation.” In Re Agee’s Estate, 252 P. at 896. The Supreme Court of Utah reversed the dismissal of his claim and remanded for further proceedings. In Re Agee’s Estate, 252 P. at 900.
Another exception allows an attorney to act on matters commenced in the lifetime of the deceased client where an administrator or executor gives the attorney that authority. In In Re Maratto’s Will, 145 N.Y.S.2d 621, 622-23 (1955), the Surrogate’s Court of New York stated that “the retainer of an attorney is terminated by the death of his client and he cannot act for the legal representative of the decedent without a new retainer.” In Re Maratto’s Will, 145 N.Y.S.2d at 622. There, the client retained the attorney to negotiate a price for the appropriation of his land by the New York State Thruway Authority. In Re Maratto’s Will *376 145 N.Y.S.2d at 622. The client agreed to pay 10% of the amount paid by the Thruway Authority. In Re Maratto’s Will, 145 N.Y.S.2d at 622. After the client’s death the attorney executed a further retainer agreement upon the same terms with the co-executor. In Re Maratto’s Will, 145 N.Y.S.2d at 623. The attorney through his negotiations with the Thruway Authority secured a payment of $57,000 for the land. In Re Maratto’s Will, 145 N.Y.S.2d at 623. The Court awarded him $5,500 in attorneys fees, based in part on the rate of compensation fixed by the deceased client in the original agreement. In Re Maratto’s Will, 145 N.Y.S.2d at 263.
Under these exceptions the November 23, 1993 fee agreement survives Lane’s death because the agreement provides Erb’s only compensation for his representation at the hearing before the Commission was contingent on the outcome. Further, Erb sought authority to pursue the claim against the Commission from Grier. Grier, as evidenced by the September 12, 1994 contingent fee agreement, granted Erb the authority to pursue the claim, and confirmed the contingent fee.
A third exception to the general rule is found in Barrett v. Towne, 196 Mass. 487, 489-90 (1907), cited by both parties to support their contention that the obligations under the November 23, 1993 contingent fee agreement survived Lane’s death. In that case, the attorney represented the deceased’s brother in a criminal matter. However, that exception does not apply to the case at hand because the Court found that “no act was required to be done, either by the testator himself, or in his name.” Barrett, 196 Mass. at 490.
The November 23, 1993 agreement survived Lane’s death, and Erb and Grier orally modified the agree-' ment at the time the Commission made its settlement offer. Erb agreed to accept 15% of each payment made to the Estate over twenty years. The parties manifested their assent through performance. Both parties agree that Erb received $30,000.00 in November 1994 when the Estate received its first two payments retroactive to January 1993, the date Lane won the two million dollar prize. Plaintiff subsequently received $15,000.00 annually for the next four years. This modification now represent the terms which bind the parties. Schinkel v. Maxi-Holding, Inc., 30 Mass.App.Ct. 41, 47 (1991).

Time Limits

The Estate moves for summary judgment on two grounds: (1) Erb did not comply with the applicable statute of limitations and (2) Erb did not properly present his claim pursuant to §§13 and 14 of chapter 197. Massachusetts General Laws chapter 197, §9 establishes a short statute of limitations that requires a creditor to bring an action against an executor or administrator within one year after the date of the death of the deceased. It reads in pertinent part:
An executor or administrator shall not be held to answer to an action by a creditor of the deceased unless such action is commenced within one year after the date of death of the deceased.
The purpose of such statutes of limitations “is that the settlement of the' estates of deceased persons should not be unnecessarily delayed.” Forbes v. Harrington, 171 Mass. 386 (1898).

Hourly Fee Agreement (Count II)

The Estate argues Erb’s claim for attorneys fees under the hourly fee agreement is barred by G.L.c. 197, §9. On November 23, 1993 Erb and Lane entered into an hourly fee agreement for Lane’s defense in the criminal matter. A jury acquitted Lane in May of 1994. Erb’s claim for attorneys fees under the hourly fee agreement accrued at that time. Section 9 required Erb to bring his claim for fees under the hourly agreement within one year after Lane’s death on August 6, 1994. Erb did not file this claim until 1999. Erb’s claim for attorneys fees is barred by the short statute of limitations. Flannery v. Flannery, 429 Mass. 55, 58 (1999) .
Erb points out that at the time he entered into the hourly and contingent fee agreements with Lane in November of 1993, and the contingent fee agreement with Grier in September of 1994, he orally agreed not to seek payment of his hourly fees if he received a contingent fee. Erb argues that this undertaking became a part of the contingent fee agreements, and that his claim as to these agreements did not accrue until after the death of Lane. The Estate responds that such an hourly fee agreement constitutes a prohibited contingent fee in a criminal case. This court need not address this issue or the other arguments the Estate raises because the court concludes that the words allegedly spoken by the plaintiff, a lawyer, regarding the hourly fee at the time he entered into agreements with Lane and Grier did not become part of the contingent fee agreement. “The rule that written agreements may not be varied or added to by parol evidence of antecedent or contemporaneous negotiations is not one merely of evidence, but is a rule of substantive law.” Sound Techniques, Inc. v. Hoffman, 50 Mass.App.Ct. 425, 429 (2000). Because Erb failed to bring his claim for an hourly fee agreement within one year of Lane’s death, the Estate is entitled to summary judgment as to Count II.

Contingent Fee Agreement (Count I)

The Estate also urges that G.L.c. 197, §9 bars Erb’s claim for fees under the contingent fee agreement. The Estate argues that this action accrued on October 20, 1994, the day the Commission agreed to pay the Estate the two million dollar prize, and that Erb faded to bring his claim within one year of Lane’s death. Erb seeks payment of his legal fees which he maintains have accrued since 1999.
*377 If a creditor’s claim accrues later than one year from the death of the deceased, §13 provides:
A creditor of the deceased, whose right of action shall not accrue within one year after the date of death of the deceased, may present his claim to the probate court at any time before the estate is fully administered; and if, upon examination thereof, the court shall find that such claim is or may become justly due from the estate, it shall order the executor or administrator to retain in his hands sufficient assets to satisfy the same. But if a person interested in the estate offers to give bond to the alleged creditor with sufficient surety or sureties for the payment of his claim if it is proved to be due, the court may order such bond to be taken, instead of requiring assets to be retained as aforesaid . . .
The Court addressed the tension between §9 and §13 in Flannery, 429 Mass at 55. In that case, the plaintiff sought five years of weekly alimony payments owed to her from her ex-spouse’s estate. The Court held that where a contract is divisible, §9 operates to bar recovery of that portion of the claim that accrued during the first year following the decedent’s death. In Flannery every time a payment was missed under the divorce agreement a new breach of contract occurred. Each breach created a new starting point from which the statute of limitations ran. Flannery, 429 Mass. at 58-59. The Court concluded that §13 allowed the plaintiff in Flannery to maintain an action for those alimony payments that became due more than one year after the death of her former spouse. Flannery, 429 Mass. at 57.
In this case, the parties do not dispute that until 1999 Erb received his attorney fee in yearly payments pursuant to the oral modification of the original contingent fee agreement. Just as in Flannery, the contingent fee agreement in this case is divisible. Flannery, 429 Mass. at 58. Thus, the “right of action” did not accrue until 1999 when the Estate refused to pay Erb. Erb’s claim for attorneys fees unpaid since 1999 falls outside the scope of §9 and within the scope of§13.
Section 14 provides that a claim acted upon by the court pursuant to §13 may be pursued in an action commenced within one year after the claim becomes payable. The Estate takes the position that a §13 order by the probate court is a prerequisite to bringing a claim under §14. Erb presented his claim for fees to the Probate Court on December 29, 1999, but that court never issued an order to the effect that the “claim is or may become justly due from the estate,” and never ordered the administrator to “retain sufficient assets to satisfy the claim.”[10]
Section 14 provides:
The decision of the probate court upon the claim of such creditor shall not be conclusive against the executor or administrator or other person interested to oppose the allowance thereof, and he shall not be compelled to pay the same unless it is proved to be due in an action commenced by the claimant within one year after his claim becomes payable ...
Once Erb’s claim became payable in 1999, Erb had one year to commence an action against the executor or other person interested. Erb commenced this action on December 27, 1999.
The court in Eresian v. Mattei explained the difference between the securing of funds to cover an alleged debt and the adjudication of the validity of the debt. 52 Mass.App.Ct. 16 (2001). It stated that §13 is “merely a means of securing funds to cover an alleged debt and avoiding the short statute of limitations. For the adjudication of the validity of the debt, the governing statute is §14, not §13.” Eresian, 52 Mass.App.Ct at 19. Eresian did not, however, address the question whether a court order pursuant to G.L.c. 197, §13 is required to maintain an action under §14.
Neither G.L.c. 197, §13, nor §14 expressly states that a §13 order is necessary for the commencement ofa suit pursuant to §14. “[A] statute is to be construed as written, in keeping with its plain meaning.” Stop & Shop Supermarket Co. v. Urstad Biddle Properties, Inc. 433, Mass. 285, 289 (2001). Importantly, §14 by its very words states that a §13 order is not conclusive against the executor or administrator. Further, §13 uses permissive language: a §13 creditor “may present” his claim to the Probate Court. “The distinction between ‘may’ and ‘shall’ is not lightly to be held to have been overlooked in legislation.” City Bank & Trust Co. v. Board of Bank Incorporation, 346 Mass. 29, 31 (1963). The creditor has the right under §13 to have sufficient assets retained by the estate for a claim that is or may become due. If the creditor did not first proceed under §13, and if the estate has already been fully administered to the heirs by the time the claim is established, the creditor will have lost his ability to recover the claim. Electric Welding Co. v. Fritz, 215 Mass 315 (1913).
The Estate cites in support of its position two cases, Brooks v. Rayner, 127 Mass. 268 (1879), and Cobb v. Kempton, 154 Mass. 266 (1891). Both cases arise out of a debt owed by a guardián who rendered an accounting showing a balance in favor of the ward, but who dies before the debt is paid. In Brooks, the Judge of Probate filed the bill in equity for the benefit of the guardian of a minor against the former guardian and his surety and the executor and devisees of his second surety. In resolving the claim against the second surety’s executor the Court found that the right of action under the guardian’s bond did not accrue within the short statute of limitations. Even though the estate remained open, the Court held that suit could not be maintained against the executor because no application had been made in Probate Court pursuant to §8 of Gen. Sts. c. 97, a predecessor to G.L.c. 197, §13, to set aside assets for the debt.
*378 Similarly, in Cobb, “[t]he debt [was] abalance found due from the intestate on the settlement in the Probate Court of his account as guardian of his son.” Cobb 154 Mass. at 268. In Cobb, however, the accounting of the guardian was not acted upon by the probate court, and thus the right of action did not accrue until many years after the short statute of limitations. Cobb 154 Mass. at 267. Pursuant to Pub. Sts. c. 136, §13, almost identical in its wording to G.L.c. 197, §13, the executrix for the son’s estate filed a petition in probate court to retain sufficient assets for the debt against the estate of the guardian, which had not been finally settled. Cobb, 154 Mass. at 268-69. She also commenced an action pursuant to Pub. Sts. c. 136 §14 for the balance of the account. Cobb, 154 Mass. at 267. The Court held that she could not maintain an action for her debt until the petition before the probate court was acted upon. The Court reasoned, as it did in Brooks, that without the order, “it cannot be determined whether the right of action will be against the administrator, or against the persons who gave the bond to pay the debt.” Cobb, 154 Mass. at 270.
These precedents cited by the Estate do not control the case for anumber ofreasons. The undisputed facts are that Erb received several payments prior to the Estate’s refusal to pay. As soon as there was a dispute regarding the fee, Erb presented a §13 claim on December 29, 1999 and he filed this action pursuant to §14 on December 27, 1999. There is no indication in the record that the Probate Court itself ever acted upon the §13 claim. Further, there is no evidence of any prejudice to the Estate. Because of the settlement with the Commission, the Estate will remain open and continue to receive payments for nine more years. Although this suit may be premature in the sense that Erb has not secured Estate assets against which to realize any judgment he may obtain, this suit does not constitute an interference with the administration of the Estate.
The November 23, 1993 contingent fee agreement between Lane and Erb survived the death of Lane. The claim under that agreement was adequately presented under §13, and timely commenced under §14.
Reasonableness of Fee
Erb moves for summary judgment on the reasonableness of the contingent fee agreement. Erb argues that (1) there is an absence of evidence showing the fee is clearly excessive or illegal; and (2) the Estate’s challenge to the reasonableness of the November 23, 1999 contingent fee agreement is time-barred under S.J.C Rule 3:05(6), 382 Mass. 762 (1981).
Rule 3:05 sets out the requirements for contingent fee agreements. Specifically, subsection (6) states:
The reasonableness of a contingent fee agreement shall be subject to review by a court of competent jurisdiction prior to the expiration of one year following the making of the agreement or one year following the date of last rendition of services thereunder. The court shall determine the reasonableness of the fee fixed by any such agreement in light of the circumstances prevailing at the time of making such agreement, including the uncertainly of the compensation and all other relevant factors. If relief is granted before the services have been completed, the court may either discharge the agreement or order its performance on modified terms as justice may dictate. The court, in granting relief, may prescribe such terms as will compensate the attorney reasonably for services rendered and expenses incurred.
Disciplinary Rule 2-106 as appearing in 382 Mass. 772-73 (1981), states:
Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.
Rule 3:05 governing contingent fee agreements, and DR 2-106 were superseded by S.J.C. Rule 3:07 of the Massachusetts Rules of Professional Conduct which included Rule 1.5 on fees. These rules became effective January 1,1998. Rule 1.5 was later amended, and those amendments were made effective January 2, 2001. At present subsection (a) of 1.5 states:
A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee. The factors to be considered in determining whether a fee is clearly excessive include the following .. .
The courts review a contingent fee agreement under the rule of professional conduct in effect at the time its making. See e.g. Cambridge Trust Company v. Hanify & King Professional Corporation, 430 Mass. 472, 476 (1999); Berman v. Linnane, 424 Mass. 867, 871 (1997) (acknowledging a change from current requirements in the proposed rules); Guenard v. Burke, 387 Mass. 802, 805 (1982). Thus, this court considers the parties’ arguments under Rule 3:05 in effect at the time Lane and Erb made the contingent fee agreement on November 23, 1993.
*379 “[The] reasonableness of a contingent fee agreement presents a jury issue.” Smith v. Consalvo, 37 Mass.App.Ct. 192, 195 (1994), citing Cameron v. Sullivan, 372 Mass. 128, 132 (1977) (affirming juiy award of fees unlawfully withheld by attorney), and Guenard, 387 Mass. at 808 (holding question of fair and reasonable compensation one for jury).[11] Courts have applied the factors found in DR 2-106 to determine a reasonable fee. See e.g. Berman v. Linnane, 434 Mass. 301, 303 (2001). See also Johnson v. Blacke, 32 Mass.App.Ct. 399, 403 (1992) (affirming contingent fee reasonable based on trial judge’s consideration of factors in DR 2-106). The burden of proof in an attorney fee dispute rests with the plaintiff as the attorney seeking to collect his fee. Sears Roebuck & Co. v. Goldstone & Sudalter, 128 F.3d 10, 17 (1st Cir. 1997).
Erb argues that for a fee agreement to be unenforceable it must be “clearly excessive” under Rule 1.5.[12] Therefore, Erb argues, the Estate’s assertion that the fees are excessive, is not a legally cognizable claim. This court concludes a contingent fee agreement sought to be enforced by an attorney can be reviewed upon a claim by the client that the fee is unreasonable. This finding is supported by Rule 3:05(6) which provides “[t]he reasonableness of a contingent fee agreement shall be subject to review . . . The court shall determine the reasonableness of the fee fixed by any such agreement in the light of the circumstances prevailing at the time . . . and all other relevant factors.” (Emphasis added.)
In addition, the November 23, 1993 fee agreement itself provides, in accordance with Rule 3:05, that “Reasonable compensation on the foregoing contingency is to be paid by the client to the attorney, but such compensation ... is not to exceed the following maximum percentages of the gross” amount collected. See Cameron v. Sullivan, 372 Mass. 128, 132 (1977) (finding juiy review of reasonableness of a duly executed fee agreement proper relying on text of agreement and S.J. C. Rule). See also Berman v. Linnane, 424 Mass. 867, 872 (1997) (“The conclusion we have reached in effect refuses to enforce a contract to pay an excessive and unreasonable fee”); Gagnon v. Shoblom, 409 Mass. 63, 67 (1991) (“On objection by a party entitled to challenge the lawfulness or reasonableness of a fee, a judge has inherent power to act”).
Finally, Comment 1(a) to Rule 1.5 instructs, “[a] fee must be illegal or clearly excessive to constitute a violation of this rule. However, it does not affect the substantive law that fees must be reasonable to be enforceable against the client.” The comments are intended to aid interpretation of these rules. Rule 3:07, Scope (9). See e.g. Berman, 424 Mass. at 871 n. 6.
The Estate has properly challenged the reasonableness of the fee, and it is an issue for determination by a juiy.
Erb also maintains he is entitled to a presumption that a contingent fee, established as a percentage in a written fee agreement, is reasonable. He cites Smith 37 Mass.App.Ct. 197, which explains, “[application of the agreed upon percentage factor ought presumptively to be regarded as a reasonable fee.” However, the court in that case goes on to state, “[t]hat does not mean that a percentage formula in a contingent fee agreement is invulnerable to attack. A client may challenge a fee which is plainly unreasonable.” Smith, 37 Mass.App.Ct. at 197.
The parties dispute facts, in addition to the facts set out above in the background, which are material to the reasonableness of the contingent fee and which make summary judgment inappropriate on this issue. Specifically, the Estate argues 15% of $2,000,000 is an excessive fee for an attorney’s work at an administrative hearing that lasted one day during which no brief was submitted and no witnesses were presented by Erb and Ravech. Erb contends that 15% of recovery is within the range of tolerated contingent fees in this jurisdiction which are often set at 33Vb%.
Both parties submitted affidavits from experts on the reasonableness of the fee. The Honorable Herbert Abrams, Ret. formed his opinion based on his experience and his understanding that Erb represented Lane in two criminal proceedings and Lane’s estate in the administrative matter before the Commission. He stated that the agreements were “fair and reasonable and not clearly excessive when entered into and remain fair and reasonable and not clearly excessive up to the present time.” Further he offers the opinion that “[i]t was reasonable for [Erb] to assume when he entered into the fee agreements with [Lane] that even if [Lane] had been found not guilty in the criminal action, [Erb] would still have to represent him before the [Commission] principally because of the lesser standard of the burden of proof that would be required in the civil... Commission proceeding ... His contingent fee of fifteen percent (15%), even considering co-counsel’s separate contingent fee agreement, was eminently fair and reasonable and not at all excessive, much less clearly excessive.” The Honorable Cortland Mathers, Ret. states, “It is my opinion that in the circumstances a fee of $300,000 for the services rendered by the plaintiff and that the plaintiff might reasonably expect it [sic] to render under his Contingent Fee Agreement of November 23, 1993, is clearly excessive and unreasonable and the fee of $90,000 that he has already received is also clearly excessive and unreasonable.” He bases his opinion on his experience, and his reading of Erb’s deposition testimony, the minutes of the Grand Juiy that indicted Lane, the motions for summary judgment and all submissions of Erb and the Estate in support thereof.[13]
Erb also points out that he achieved a favorable result in an unusual case. In his affidavit he details the difficulty of the underlying criminal case, where the Commonwealth sought to prove Lane had received stolen property and attempted alarceny in hying to claim *380 the two million dollar prize. In order to prevail at the Commission, Erb knew that he and Ravech had to show Lane purchased the lottery ticket honestly. According to his affidavit this was difficult because the Commission had “substantial resources to assist the Commonwealth in all aspects of its prosecution ... It was the lottery commission which provided witnesses and prepared exhibits ... for the Commonwealth.”[14] He further states, “I represented [Lane] in two criminal trials .. . and subsequently his estate in the civil lottery commission proceeding ... all within eleven months.”
The court leaves the experts’ opinions to be considered at another time. Because the reasonableness of the fee in the contingent fee agreement requires resolving issues of disputed fact, Erb’s and the Estate’s cross motions for summary judgment are denied.
As a second basis for summaryjudgment, the plaintiff takes the position that the limitations period set out in 3:05(6) bars the Estate’s challenge to the reasonableness of fees. In pertinent part Rule 3:05(6) reads:
The reasonableness of a contingent fee agreement shall be subject to review by a court of competent jurisdiction prior to the expiration of one year following the making of the agreement or one year following the date of last rendition of services thereunder.
Whether or not the limitations period set out in the Rule has the effect of barring a claim brought after the passing of that period does not appear to have been addressed by our courts. Indeed, in Guenard v. Burke, the Court only said, “[w]e need not decide whether, if a contingent fee agreement is properly executed in circumstances authorized by the rule, a client may challenge the reasonableness of the fee after the time limits of the rule have expired.” 387 Mass at 809 n. 5. But see Cameron, 372 Mass. at 132 (applying the one-year period from the date of last rendition of services and finding plaintiffs claim within the limit).
The time limit was omitted from Rule 1.5. Paragraph 6 of the comment to Rule 1.5 explains, “Former Rule 3.05(6), with its limitations period for challenging contingent fee agreements, was eliminated as inappropriate for a disciplinary rule.”
The Court concludes that the limitations period in Rule 3:05(6) does not apply to bar the Estate from disputing the reasonableness of the fee. Erb brought this action seeking to enforce the contingent fee agreement. The November 23, 1993 contingent fee agreement itself provides that only “reasonable compensation” is to be paid by the client. The reasonableness of the fees is a matter for the jury.
Counterclaims
Erb urges G.L.c. 260, §10 that sets out the time limitations in which administrators must bring claims bars the Estate’s counterclaims for breach of fiduciary duty to Lane (Count II), and malpractice with respect to Erb's representation of Lane (Count IV).[15]
General Laws chapter 260, §10 provides:
If a person entitled to bring or liable to any action before mentioned dies before the expiration of the time hereinbefore limited, or within thirty days after the expiration of said time, and the cause of action by law survives, the action may be commenced by the executor or administrator at any time within the period within which the deceased might have brought the action or within two years after his giving bond for the discharge of his trust. . .
Notwithstanding the provisions of the preceding paragraph, any action pursuant to this section may be commenced by the executor or administrator within three years from the date when the executor or administrator knew, or in the exercise of reasonable diligence, should have know of the factual basis for a cause of action.
The Estate alleges Erb breached his fiduciary duty to Lane at the November 23, 1993 meeting. At that time, Lane allegedly raised concerns about Ravech because Ravech suggested Lane submit to a lie detector and enter into a plea. The Estate urges that Erb had an obligation to allay Lane’s concerns. It is the Estate’s position that Lane did not need two attorneys to represent him. The Estate claims Erb committed malpractice in his representation of Lane in the two criminal trials, because Erb failed to investigate whether lottery tickets could be purchased out of sequence in preparation for the first criminal trial.[16]
The first step in analyzing whether G.L.c. 260, §10 bars the Estate from bringing the claims for breach of fiduciary duty and malpractice is whether the claims were brought within the time within which Lane could have brought them.
General Laws chapter 260, §2A provides:
Except as otherwise provided, actions of tort . . . shall be commenced only within three years next after the cause of action accrues.
A claim for breach of fiduciary duty sounds in tort and is subject to a three-year statute of limitations. See Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 517 (1997). Lane would have had three years to bring a claim of breach of fiduciary duly against Erb.
General Laws chapter 260, §4 provides:
Actions of contract or tort for malpractice, error or mistake against attorneys . . . shall be commenced only within three years next after the cause of action accrues.
Lane’s claim for malpractice against Erb is subject to a three-year statute of limitation. Swasey v. Barron, 46 Mass.App.Ct. 127, 129 (1999).
The alleged conduct giving rise to the claim for breach of fiduciary duty occurred at the November 23, 1993 meeting. Assuming, for summaryjudgment purposes, that conduct continued throughout Erb’s representation of Lane in the two criminal trials, the breach of fiduciary duty could have occurred no later *381 than Lane’s acquittal in May of 1994. Erb commenced this action against the Estate on December 27, 1999. Counterclaims are considered filed on the same date as the complaint. G.L.c. 260, §36.[17] At that time the three-year limitations period had passed, and Lane could not have sustained an action for breach of fiduciary duty.
Likewise, the conduct comprising the malpractice claim made by the Estate occurred during the first criminal trial, and assuming for the purposes of summary judgment, it continued throughout Erb’s representation of Lane in the criminal matter, it ended with Lane’s acquittal in May of 1994. Had Lane lived, he could not have brought this claim on the date which the Estate is deemed to have filed it because the three-year statute of limitations had run.
Next, §10 allows the executor or administrator to bring claims “within two years after his giving bond for the discharge of his trust . . .” The Probate Court appointed Grier executor in August of 1994 as provided for in Lane’s will. That court approved Grier’s bond on August 29,1994. The Estate’s right to bring both actions in this period thus expired in August 1996. The Estate claims the relevant date from which to calculate the two years is the date Wainwright gave bond as administrator d.b.n. in August of 1998. The Estate takes the position that the claim is within the statutory two-year period because Erb filed the complaint on December 27, 1999. In opposing Erb’s motion for summary judgment on this issue, the Estate does not offer any reason for taking the date Wainwright gave bond instead of the date Grier did so. The appointment of a subsequent fiduciary alone will not commence a new two-year limitations period. Cf. Hill v.Mixter 5 Allen 27 (1862) (where debtor predeceases creditor, executor of creditor does not have new two-year period to bring action against executor of debtor). The burden of proving the limitations period has not passed rests with the Estate, as the party making the counterclaim. See Williams v. Ely, 423 Mass. 467, 475 (1996).
Finally, the last step under §10 is to analyze whether the claims were brought “within three years from the date when the executor or administrator knew, or in the exercise of reasonable diligence, should have known of the factual basis for a cause of action.”
It is undisputed that Grier was present at the November 23, 1993 meeting where Lane hired Erb and signed the contingent and hourly fee agreements. The parties also agree that in the succeeding months, Erb represented Lane in two criminal trials. The record shows Grier signed the fee agreement that confirmed the contingent fee, and gave Erb the authority to pursue the lottery ticket claim. Both parties acknowledge that Grier made payments to Erb pursuant to the contingent fee agreement and its oral modification in 1994, 1995, and 1996. Well before December 27, 1996, therefore, Grier knew or with reasonable diligence should have known of the facts the Estate now alleges amount to a breach of fiduciary duty and malpractice.
Grier’s removal as executor in and of itself is not sufficient to toll the statute of limitations because the alleged acts that precipitated Grier’s removal did not conceal the facts surrounding Erb’s representation of Lane in the criminal matters that are the basis of the counterclaims. Riley v. Presnell, 409 Mass. 239, 250-51 (1991) (“a cause of action is not concealed from one who has knowledge of the facts that create it”), quoting Stetson v. French, 321 Mass. 195, 198 (1947).
Under G.L.c. 260, §10, the Estate cannot maintain its counterclaims for breach of fiduciary duty (Count II) and malpractice (Count TV) because the statute of limitations has run.[18]
Erb also moves for summary judgment on Count I of the counterclaim for conversion and unjust enrichment. He argues there is no triable issue of fact. Under this count, the Estate claims Erb was overpaid. For the reasons set out above in the discussion on the reasonableness of the contingent fee agreement, summary judgment on this count must be denied.
ORDER
For the reasons set out above, the Court ALLOWS summary judgment on Count II for breach of the hourly fee agreement, and Counts III through VII insofar as they seek to recover on the hourly fee agreement, but DENIES summary judgment on Count I for breach of the contingent fee agreement and Counts III through VII insofar as they seek recovery for the contingent fee agreement. Further the Court ALLOWS summary judgment on Counts II, III and IV of the Counterclaims, but DENLES summary judgment on Count I of the counterclaim.

The fee agreement between Ravech and Lane reads:
... If money is paid voluntarily without necessity of law suit then legal fee paid to Melvin Ravech will be $15,000.00.
If matter is brought before court and settlement is made prior to the beginning of a trial on merits then Melvin Ravech will be entitled to ten (10%) percent of the settlement agreement.
Should trial proceed to a conclusion then Melvin Ravech will be entitled to fifteen (15%) percent of any and all recovery.

In this suit, Erb seeks a 15% contingent fee.

After taxes the amount of each payment equals $67,000.

On February, 15 1995, Erb filed a notice of claim in probate court.

The record shows that Midland States Life Insurance Company (Midland) filed a complaint on September 21, 1999 against Wainwright as administrator d.b.n. of Lane’s estate. The complaint alleges Wainwright has failed to pay certain sums owed to Midland under several notes securing loans to Grier. It appears from the complaint and the exhibits attached that Grier borrowed money and gave Midland a security interest in the proceeds of the lottery prize. Midland alleges it is owed $658,000.

The final payment from the Commission to the Estate is due in 2012.

G.L.c. 197, §13, in pertinent part, reads:
A creditor of the deceased, whose right of action shall not accrue within one year after the date of death of the deceased, may present his claim to the probate court at any time before the estate is fully administered; and if, upon examination thereof, the court shall find that such claim is or may become justly due from the estate, it shall order the executor or administrator to retain in his hands sufficient assets to satisfy the same . . .

Ravech brought a similar action in 1999 under his contingent fee agreement and settled for $55,000. In total, Ravech received $100,000.00 for his representation of Lane.

Erb in a brief to the court urges that there was a defacto §13 order and cites to Affidavit of Attorney Kenneth Kurnos. Paragraphs 5 and 6, of the Kurnos affidavit is the subject of a motion to strike made by the Estate. These paragraphs state:
5. Although the [Probate Court] Clerk’s Office accepted the document from me and stamped it “Received,” I was informed by, I believe, an assistant register, that in contested cases such as this, the Court left it to the parties to litigate in the Superior Court. At my request, this staff member checked with the Judge presiding that day and informed me that the Judge had corroborated this fact.
6. Since I had been informed that the Court would not act upon the G.L.c. 197, §13 petition, and that I would have to litigate the matter in Superior Court, I have pursued Mr. Erb’s claim in the Superior Court since that time. This petition remains in the Estate’s Probate Court file to this day. See certified copy appended hereto as Exhibit “5.”
The Estate contends these paragraphs are not admissible because they contain hearsay or hearsay within hearsay. An affidavit of a party’s attorney must meet the summary judgment standard. TLT Const. Corp. v. A. Anthony Tappe and Associatees, Inc., 48 Mass.App.Ct. 1, 11-12 (1999). The court agrees with the Estate and will not consider these statements.

However, in Berman v. Linnane, 434 Mass. 301, 303 (2001), the Court stated “[w]hat constitutes a reasonable fee is a question that is committed to the sound discretion of the judge.” It cited to McGrath v. Mishra, 386 Mass. 74, 87 (1982), in which the Court reviewed the attorney fee granted pursuant to G.L.c. 93A. In Berman, 434 Mass. 301, both of the parties sought review of an award of attorneys fees. This case arose out of Berman v. Linnane, 424 Mass. 867. In that case the plaintiffs were attorneys. They were never paid by their client for their work in reaching a settlement on behalf of the client with Linnane. Linnane, in turn had not performed pursuant to the settlement agreement. The client, to settle his attorneys’ claim for fees, assigned.his rights under the settlement agreement to the attorneys. This agreement gave the attorneys the right to recover their unpaid fees, any costs incurred in pursing the action against Linnane, a reasonable fee in pursuing the action against Linnane and 40% of the balance. At trial, after a jury verdict in their favor, the trial judge granted a judgment notwithstanding the verdict in favor of Linnane based on his finding that the fee agreement was void as champertous. On appeal the Court reversed the finding that the fee agreement was champertous. It concluded that the fee agreement was a contingent fee agreement that failed to satisfy 3:05, but that the plaintiff-attorneys were entitled to the amount of their unpaid fees with interest and costs and reasonable fees in pursuing the claim against Linnane. See also Johnson v. Blacke, 32 Mass.App.Ct. 399, 403 (1992); Donald v. Shoblom, 409 Mass. 63, 67 (1991).
The Court in Smith v. Consalvo, 37 Mass.App.Ct. at 195, stated the reasonableness of a contingent fee agreement is a juiy issue, but it did not apply that principle because it was not relevant to that case. It cited Cameron v. Sullivan, 372 Mass. at 133, and Guenard v. Burke, 387 Mass at 808. Smith, 37 Mass.App.Ct. at 195 n. 5. In both of those cases the plaintiff sought to recover funds wrongfully withheld by the attorney-defendant. In Cameron, the defendant asserted the funds withheld were applied to his fees based on a contingent fee agreement that set a fee at 50% of the recovery and an hourly fee agreement. On appeal the defendant argued it was error for the jury to consider the reasonableness of that fee where the agreement was duly executed by the parties. The Court pointed out that the attorney offered expert testimony that the fee was reasonable, and that Rule 3:14 (renumbered in 1981 as Rule 3:05) on contingent fee agreements required the fee to be reasonable, as did the terms of the fee agreement. Further the Court explained that “[t]he reasonableness of a contingent fee shall be subject to review by a court of competent jurisdiction, ” and that ‘court’ “includes a court consisting of ajudge and jury.” Cameron, 372 Mass. at 133 n. 3.
In Guenard, the plaintiff-client appealed the trial court’s award of an attorney fee for the fair and reasonable value of services. The Supreme Judicial Court on review held that the fair and reasonable value of services was a question for the jury. Specifically it held, “the reasonableness of a contingent fee agreement shall be subject to review by a court of competent jurisdiction. The word ‘court,’ however, includes a court consisting of ajudge and jury, where appropriate.” (Internal quotations omitted.)
In this case, the reasonableness of the fee presents issues of disputed fact that preclude summary judgment.

Rule 1.5 sets out the same list of factors found in former DR 2-106.

Erb moved post-hearing to strike the Mathers affidavit as “containing no evidence competent to be admitted at trial on any of the issues before the [c]ourt.” The court finds the Mathers affidavit to be both competent and relevant to the issue of the reasonableness of attorneys fees. The court has not considered the affidavit on any other issue.

This statement and others in Erb’s affidavit are subject to a motion to strike made by the Estate. The Estate challenges the particular statements quoted as conclusoiy and hearsay. The motion is denied.

The Estate in its opposition to Erb’s summary judgment motion concedes that Count III for breach of fiduciary duty to the Estate ought to be dismissed. The court allows summary judgment as to Count III.

The Estate also argues that it was negligent for Erb to submit the transcripts from the criminal trials at the Commission hearing. However, Lane died on August 6, 1994 and the hearing was held on September 14, 1994. At that time, any duty owed by Erb was owed to the Estate, and not to Lane. G.L.c. 260, §10.

General Laws chapter 260, §36 provides in pertinent part:
The provisions of law relative to limitations of actions shall apply to a counterclaim by the defendant. The time of such limitation shall be computed as if an action had been commenced therefor at the time the plaintiffs action was commenced.

General Laws chapter 260, §36 allows the Estate to assert a compulsory counterclaim “without regard to the provisions of law relative to limitations of actions” as a setoff to Erb’s damages. Arthur D. Little International Inc. v. Dooyang, 928 F.Sup. 1189, 1203 (D.Mass. 1996). The counterclaims for breach of fiduciary duty and malpractice seek to recover damages arising out of Erb’s representation of Lane in the two criminal trials. This court has decided that Erb cannot recover on the hourly fee agreement for the criminal defense work because it was not timely presented. Thus, there are no damages against which to offset any recovery for these counterclaims which are otherwise time barred.